Kenneth Dennis was convicted in the Circuit Court of Lafayette County, Mississippi, for the raping and the kidnapping of a young female University student. Life sentences were imposed for each, to run consecutively. We affirm.
 I. FACTS
On June 29, 1986, the victim was kidnapped by two men at approximately 10:00 p.m. from her dorm parking lot at the University of Mississippi. Dennis was one of two men who abducted her at gunpoint forcing her into a car. Dennis was tried separately.
The men took her to a wooded area in the countryside of Lafayette County where she was subjected to brutal sexual attacks, including rape by the defendant Dennis.
After these attacks her assailants drove aimlessly about for some time, apparently uncertain as to what to do with their victim. During this period Dennis sat in the back seat of the car and held a gun in the small of her back. She promised not to tell and begged them to let her go. The men instead drove to Ben's and Todd's, a remote, rural convenience store, where they purchased gas, cigarettes, beer, and a coke. The victim was able to see Dennis clearly at that point because they were in a lighted area. Thus she was able to testify that no doubt existed in her mind that the man she identified in the court room, Kenneth Dennis, was one of the men who abducted and raped her.
The trio drove around for another long period after they left Ben's and Todd's to discuss the disposal of the young woman. She again promised that she would not tell if they would just let her live. Finally the car stopped, and Dennis got out of the car under a big security light. Dennis' confederate then informed her that he was going to take her back to campus.
After other events, not necessary to be related here, the confederate left her on a dead end road near the campus, and she hysterically ran back to her dorm parking lot. She immediately reported this crime to the University Police, and they took her to the Oxford-Lafayette County hospital at approximately 12:30 p.m. where she was examined.
After being examined she gave the University Police Department the information she had. She rode with the police down the roads where she was taken and viewed two line-ups. She was able to identify Dennis out of the second line-up. He was picked up for questioning around 1:00 a.m. on July 2, 1986.
On July 3, 1986, a male sexual assault kit test was performed on Dennis, and a blood sample was taken. In due course he was indicted on two counts for kidnapping and rape, tried, and convicted as we have stated. He now appeals to this court.
On Appeal, defendant asserts that the following things occurred and he assigns them as error:
 1. There was improper exercise of peremptory challenges to exclude black venire persons from the jury.
 2. The foreman of the jury was a long-term private practice client of the county prosecutor.
 3. Defense counsel was not served with a copy of the witness list upon which the prosecution relied at trial.
 4. The trial court allowed testimony from a police officer speculating that Ken Dennis was involved in other crimes.
 5. The trial court refused to exclude highly prejudicial medical evidence of minimal probative value, and refused to appoint a medical expert to assist the defense.
 6. The trial court improperly refused jury instructions concerning non-flight.
 7. The prosecution improperly interrupted defense's closing argument with the prejudicial objection, and said prejudice *Page 681 
was then amplified by the trial court's ruling.
We examine each of these complaints below.
 II. DISCUSSION A. THE PROSECUTION EXERCISED PEREMPTORY CHALLENGES TO EXCLUDE BLACK VENIRE PERSONS FROM THE JURY IN THE ABSENCE OF VIABLE NON-DISCRIMINATORY REASONS FOR SUCH EXCLUSION.
The defendant relies on the decision in Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in support of his suggestion of discrimination. Batson established that a defendant can make out a prima facie case in the following manner:
 [T]he defendant first must show that he is a member of a cognizable racial group, Castenada v. Partida
[430 U.S. 482, 494, 97 S.Ct. 1272, 1275, 51 L.Ed.2d 498 (1977)], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Avery v. Georgia, [345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953)]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. (emphasis added)
 Batson v. Kentucky, 476 U.S. at 96, 106 S.Ct. at 1722-23, 90 L.Ed.2d at 87.
We hold that no prima facie case of racial discrimination has been shown in this case. To establish such a case, the defendant must show, among other things, that the government's use of peremptory challenges and any other relevant circumstances raise an inference that the government excluded prospective jurors on the basis of their race. See Lockett v. State, 517 So.2d 1346, 1349, 1355 (Miss. 1987) (reviewing requirements of a prima facie case under Batson); U.S. v. Montgomery, 819 F.2d 847 (8th Cir. 1987) (discussing the third prong of the Batson
requirements for a prima facie case). The defendant in this case failed to meet his burden of proof in demonstrating that the prosecution exercised his peremptory challenges in a racially discriminatory manner. See U.S. v. Cartlidge, 808 F.2d 1064
(5th Cir. 1987).
Here the defendant merely stated that the prosecutor had exercised five of his seven peremptory challenges against blacks, and then he asserted "We would raise discrimination." While the court did not require it, the prosecutor offered to state his race-neutral reasons for the challenges that were made. The Court said "You may proceed if you want it part of the record, Mr. Little." Batson contains a three-pronged test for a prima facie case, and the third prong was completely ignored. The prosecutor had several challenges left. The defendant had several left. Numerous potential black jurors were left uncalled, and one black juror was in the box. The victim of the crime charged was black, as well as the defendant. When we examine all of the facts and circumstances surrounding the case, they simply fail to create an inference that the prosecution purposefully and intentionally struck potential jurors solely because they were black. UnitedStates v. Grandison, Evans, and Kelly, 885 F.2d 143 (4th Cir. 1989).
 B. THE FOREMAN OF THE JURY WAS A LONG-TERM PRIVATE PRACTICE CLIENT OF THE COUNTY PROSECUTOR.
The defendant asserts in his second assignment of error that a private practice client of the county prosecutor was improperly allowed to serve on the jury. However, the record does not reflect that the prosecuting attorney or his firm presently or regularly represented the juror in question. Moreover, the record does not indicate *Page 682 
that the juror or any member of his immediate family paid the attorney or his firm any regular monthly or annual salary for legal work.
The trial judge found that the voir dire questioning only related to present representation, not past, and that the juror was not guilty of failure to respond to any question of which he had substantial knowledge. See Odom v. State, 355 So.2d 1381, 1383 (Miss. 1978) (setting forth the appropriate analysis to follow when a prospective juror fails to respond to a voir dire question to determine prejudice to defendant). Further, the trial court found through its own questioning that the juror was fair and impartial. Since juror impartiality and fairness is a judicial question to be determined on a case by case basis, the court's judgment will not be disturbed unless clearly wrong.Walls v. State, 371 So.2d 411, 413 (Miss. 1979); Odom v.State, 355 So.2d at 383.
No evidence was presented indicating that the trial court was wrong in its determination, and, therefore, this assignment of error is without merit.
 C. DEFENSE COUNSEL WERE NOT SERVED WITH A COPY OF THE WITNESS LIST UPON WHICH THE PROSECUTION RELIED AT TRIAL.
The defendant contends that the revised witness list was not served on his counsel, even though such list was filed with the court. With respect to the discovery dispute, Rule 4.06 of the Uniform Criminal Rules of Circuit Court requires that the prosecution shall disclose to each defendant or to his attorney the names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial.
A violation of Rule 4.06 of the Uniform Criminal Rules of Circuit Court is harmless error "unless it shall affirmatively appear, from the whole record, that such . . . has resulted in a miscarriage of justice." McKinney v. State, 482 So.2d 1129
(Miss. 1986) (quoting Buckhalter v. State, 480 So.2d 1128
(Miss. 1985). In the case before us, and under its facts, the error has, indeed, proved harmless.
There were two additional names on the revised list, Turner and Allison, which were in dispute. The facts show that the defense had actual knowledge of Turner as a potential witness. The prosecution had spoken with defense counsel about him and about the laboratory reports. Defense counsel admitted that they had seen his name on those reports, and that they had spoken to him on the telephone and briefly in person. Defense counsel did not ask for more time to interview him or for a continuance.
With respect to the witness Allison, the pathologist, the record shows that the prosecutor had gone over his report with defense counsel, page by page, some days before the trial. The court confirmed that defense counsel had made that report to him. At any rate the court allowed a recess to permit a conference with the witness. No further request was made by the defense, and the record shows an intense and highly competent cross examination. See Box v. State, 437 So.2d 19, 22-26 (Miss. 1983).
 D. THE TRIAL COURT ALLOWED TESTIMONY FROM A POLICE OFFICER SPECULATING THAT KEN DENNIS WAS INVOLVED WITH OTHER CRIMES.
This assignment of error, relating to the testimony of Captain Mills when he described the mental state of the defendant when picked up for questioning, hardly merits discussion. The officer related that when he arrested the defendant at his grandmother's home the defendant appeared "wild-eyed" and tense, as if on alcohol or drugs.
The defense objected, and the trial judge sustained the objection and instructed the jury to disregard the statement.Shelby v. State, 402 So.2d 338, 341 (Miss. 1981). This assignment of error has no merit since the jury was properly instructed and no prejudice resulted. Williams v. State,512 So.2d 666, *Page 683 
671 (Miss. 1987) (our law presumes that the jury does as it is told); Shoemaker v. State, 502 So.2d 1193, 1195 (1987) (jurors presumed to follow trial judge's instructions and it would show insufficient confidence in the good sense and discretion of trial judges to hold otherwise); Horne v. State,487 So.2d 213 (Miss. 1986) (trial court's refusal to grant mistrial after district attorney made statement that defendant had committed prior criminal offense was not error); Holifieldv. State, 275 So.2d 851 (Miss. 1973), cert. dismissed414 U.S. 990, 94 S.Ct. 382, 38 L.Ed.2d 253 (when trial court sustains objections to improper remarks of legal counsel participating in a trial, it is presumed, unless otherwise shown, that jury followed the directions of the trial judge to disregard such comment or testimony).
 E. THE TRIAL COURT REFUSED TO EXCLUDE HIGHLY PREJUDICIAL MEDICAL EVIDENCE OF MINIMAL PROBATIVE VALUE AND REFUSED TO APPOINT THE DEFENSE A MEDICAL EXPERT.
With respect to the defendant's demand for a medical expert, the Constitution does not require the State to furnish an indigent defendant with an expert on demand. Johnson v. State,476 So.2d 1195 (Miss. 1985). However, fundamental fairness at times requires the authorization for appointment of such. Id.
The denial of expert assistance must be weighed on a case by case basis in order to determine whether the denial of expert assistance was prejudicial to the assurance of a fair trial.Id. In the instant case, no such prejudice resulted. See alsoDavis v. State, 374 So.2d 1293 (Miss. 1979) (relief granted only when the accused demonstrates that the trial court's abuse of discretion was so egregious as to deny due process and as to render his trial fundamentally unfair).
Here, the defendant had full access to the experts of the State together with the reports of those experts. The record further revealed that the defense counsel was able to subject the State's experts to a rigid cross examination, and that no indication of incompetency or bias was present with respect to the experts. The defendant was therefore not placed at a disadvantage by the refusal of the trial court to provide him with funds for an expert to examine blood and semen samples.
The defendant contends that the medical evidence was highly prejudicial and of minimal probative value. However, relevancy must be determined by the trial judge on a case by case basis.Woodruff v. State, 518 So.2d 669 (Miss. 1988). Medical evidence provides proof that the victim was in fact raped and helps exclude possible suspects while supporting the defendant's conviction for rape. McFee v. State, 511 So.2d 130 (Miss. 1987). We find this assignment of error to be without merit.
 F. THE TRIAL COURT IMPROPERLY REFUSED JURY INSTRUCTIONS CONCERNING NON-FLIGHT.
This Court further finds that the trial court did not err in refusing to grant a reverse flight instruction. The failure to flee is a circumstance indicative of nothing, and is as consistent with guilt as innocence. See Howard v. State,182 Miss. 27, 181 So. 525 (1938) (finding flight instruction calculated to mislead the jury into believing that flight was substantive evidence of guilt). See also Pannell v. State,455 So.2d 785 (Miss. 1984) (holding that a "flight instruction" was to be given only in cases wherein that circumstance had considerable probative value); Quarles v. State, 199 So.2d 58
(Miss. 1967) (finding "flight" instruction confusing and misleading).
The general rule is that all instructions must be supported by the evidence, and the evidence in this case fails to support any such instruction. Brazile v. State, 514 So.2d 325 (Miss. 1987).See also Gray v. State, 472 So.2d 409 (Miss. 1985) (jury instructions are not to be given unless there is an evidentiary basis for them); Barnes v. State, 457 So.2d 1347 (Miss. 1984) (a theory without proof simply cannot support the *Page 684 
granting of a jury instruction). Since the record in this case does not support the contention that nonflight had considerable probative value of guilt or innocence, this assignment of error is without merit.
 G. THE PROSECUTION IMPROPERLY INTERRUPTED DEFENSE COUNSEL'S CLOSING ARGUMENT WITH THE PREJUDICIAL OBJECTION, AND SAID PREJUDICE WAS THEN AMPLIFIED BY THE TRIAL COURT'S RULING.
The defendant asserts as his final assignment of error that the prosecution improperly interrupted defense counsel's closing argument, and that the court implied that defense counsel misrepresented facts in evidence. During defense counsel's closing argument, the following exchange occurred:
 BY MR. WILSON (defense): What's really interesting about this case is the proof that didn't show up. You heard Captain Mills testify that they took fingerprints samples from Ken Dennis. They took hair samples from Ken Dennis. They took clothing. . . .
 BY MR. ROBERTS (prosecution): Objection, Your Honor, that's not what he testified to. That's outside the scope of his testimony.
 BY MR. WILSON (defense): Your Honor, on yesterday, he testified to that.
 BY THE COURT: Ladies and gentlemen, the attorneys will not intentionally try to mislead you. If you remember things differently from the attorneys, then your memory and recollection prevails. . . .
This Court finds that the comment by the trial judge fails to constitute a comment upon the weight of the evidence. Weaver v.State, 497 So.2d 1089, 1094, 1096 (Miss. 1986). Rather, this comment falls within the scope of comments which the trial judge was privileged to make. Id. See also Wetz v. State,503 So.2d 803, 810, 813 (Miss. 1987) (where an objection is sustained and the jury is admonished to disregard the question, this Court will not find reversible error). Moreover, it is the duty of the trial counsel to promptly make objections and to insist upon a ruling by a trial judge if he deems opposing counsel to be overstepping the wide range of authorized argument. Johnson v. State,477 So.2d 196, 209-10 (Miss. 1985), cert. denied, 476 U.S. 1109, 106 S.Ct. 1958, 90 L.Ed.2d 366, reh'g denied, 476 U.S. 1189, 106 S.Ct. 2930, 91 L.Ed.2d 557 (1986). See also Wideman v.State, 339 So.2d 1378, 1382 (Miss. 1976) (trial court found that statements made by the prosecuting attorney were improper and admonished prosecuting attorney of dangers of reversal in going outside the record in arguing. However, the Court did not find the remarks to constitute reversible error).
The case of Craft v. State, 226 Miss. 426, 84 So.2d 531
(1956), stated that the test to determine whether an improper argument required reversal was whether the argument created prejudice against the accused, resulting in a decision influenced by prejudice. In this case no such prejudice resulted, and this assignment of error is therefore without merit.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
PITTMAN, J., not participating.