591 So.2d 428 (1991)
Robert L. GOVAN, Jr.
v.
STATE of Mississippi.
No. 90-KA-464.
Supreme Court of Mississippi.
November 27, 1991.
James D. Minor, Oxford, for appellant.
Mike C. Moore, Atty. Gen., Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and McRAE, JJ.
McRAE, Justice, for the Court:
This is an appeal from the Circuit Court of Panola County, before which the appellant, Robert L. Govan, Jr. ("Govan") was convicted of the sale of cocaine on April 24, 1990. On April 27, 1990, the court sentenced him to a term of twenty years imprisonment, twelve years suspended and five years under supervision of the Mississippi Department of Corrections with terms and conditions, and a $5,000.00 fine, plus court costs. Following the denial of his motion for a new trial, he raised the following issues before this Court:
1. Is the challenge of black jurors because they know the accused racially neutral when the trial takes place in a rural setting where a 42-year-old black Appellant has lived for all but two years of his life?
2. Was the verdict against the weight of the evidence?
Finding no merit in Govan's assignments of error, we affirm.

FACTS
On August 9, 1989, appellant Govan, a black male, allegedly sold an undetermined quantity of crack cocaine to Sterling Gates ("Gates"), an informant. Three law enforcement officials observed the transaction from inside a van and recorded the conversation between Govan and Gates via a radio transmitter attached to Gates' person.
According to the testimony of Gates and Panola County Sheriff David Bryan ("Bryan"), one of the three officers in the van, Govan departed from the scene driving a white Toyota car. Both Gates and Bryan identified Govan at trial as the person who sold Gates the cocaine. Waller testified that since he was running the taping equipment, he did not get a good look at the seller's face, but noted that he was "short" and "stocky" (Tr. at 46-47). On the tape, Gates addressed the seller as "Govan" and as "Goldie," Govan's nickname.
The officers picked up Gates shortly after the sale and retrieved from him the cocaine he had allegedly purchased from Govan.
*429 At his trial, Govan defended himself primarily by attempting to establish doubt concerning whether it was he who sold the cocaine to Gates. He testified in his own behalf that he did not make the alleged sale. Additionally, he testified that on an occasion prior to the alleged sale, Gates had told him, "I'm gonna get you, man." According to Govan, Gates made the threat when he (Govan) tried to stop Gates from smoking crack cocaine in a public park. George Watters ("Watters"), an acquaintance of Govan, testified to corroborate Govan's account of the event. Gates, however, categorically denied the incident.
Govan also introduced the testimony of A.D. Gordon ("Gordon"), the man from whom he had purchased the white Toyota. Gordon testified that he "estimated" that he sold Govan the car on August 11 (two days after the alleged sale), although he admitted that he could have sold Govan the car as long as two weeks prior to the alleged cocaine sale.
Govan's main focus on appeal is upon the prosecution's successful peremptory challenges against three prospective black jurors. As grounds for its first challenge (S-1), the prosecution noted that the prospective juror (1) was twenty-five years old, (2) indicated that she knew defendant Govan, (3) indicated that she knew informant Gates, and (4) was alleged to "hang around with a crowd that's involved in the drug scene".
As grounds for its second challenge (S-2), the prosecution stated that the prospective juror (1) was eighty-one years old, (2) did not completely fill out the juror questionaire, and (3) did not stand up when the prosecutor asked all the prospective jurors who wanted to eradicate drugs to rise to their feet.
As grounds for its third challenge (S-3), the prosecution indicated that the prospective juror (1) stated that she knew defendant Govan, (2) stated that she knew informant Gates, and (3) was alleged by James Rudd, a law enforcement official, to have a son who had been in trouble with the law. The deputy circuit clerk verified that the prospective juror's son was in a drug clinic.
Defense counsel raised a "Batson objection" and requested an opportunity to cross examine the law enforcement officials from whom the prosecutor had obtained information regarding the first and third challenged jurors. The court denied the objection and request.
The empaneled jury had only one black member.

LAW

I. DID THE TRIAL COURT ERR IN OVERRULING GOVAN'S BATSON OBJECTIONS?
Govan, a black, contends that the state's first and third peremptory challenges were racially discriminatory. Since Govan's acquaintances were primarily black, Govan argues, excluding jurors because they "knew" the defendant impacted more heavily on blacks than on whites.[1]
According to Swain v. Alabama, 380 U.S. 202, 203-04, 85 S.Ct. 824, 826-27, 13 L.Ed.2d 759 (1965), the state may not purposefully exclude blacks from a jury solely on account of race. The United States Supreme Court in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), held that a defendant can make out a prima facie case of purposeful exclusion as follows: (1) he must show that he is a member of a cognizable racial group and that the prosecution has exercised peremptory challenges toward the elimination of veniremen in that group;[2] (2) he is entitled to rely on the fact that peremptory challenges constitute a jury selection practice *430 that permits "those to discriminate who are of a mind to discriminate," and (3) the attendant facts and circumstances must justify an inference that the prosecutor[3] used peremptory challenges to exclude veniremen on account of their race. Id. at 96, 106 S.Ct. at 1722; Dennis v. State, 555 So.2d 679, 681 (Miss. 1989); Lockett v. State, 517 So.2d 1346, 1349 (Miss. 1987). If the defendant satisfies this three-prong test, then the burden shifts to the prosecution to articulate a racially neutral explanation. Id. at 97-98, 106 S.Ct. at 1723-24.
In his attempt to establish a prima facie showing of purposeful discrimination, Govan has satisfied the first two prongs of the Batson test. The record clearly reflects that Govan is black and that the prosecution exercised peremptory challenges toward the elimination of three members of the black race. Further, Govan is entitled to rely on the truism of the second Batson prong. Govan has failed, however, to demonstrate such attendant facts and circumstances as would justify an inference that the prosecutor used peremptory challenges to purposefully exclude veniremen because they were black.
Excluding jurors on grounds that they are acquainted with the defendant may indeed, as Govan contends, have had a discriminatory effect since more blacks than whites are acquainted with Govan. However, the law does not proscribe the mere incidental exclusion of blacks from a jury. "The mere fact that a jury is white does not violate Batson; rather it is the racially discriminatory exercise of peremptory challenges to strike black jurors from the jury that violates the Batson rule." Sudduth v. State, 562 So.2d 67, 71 (Miss. 1990); see Lockart v. McCree, 476 U.S. 162, 175, 106 S.Ct. 1758, 1766, 90 L.Ed.2d 137 (1986) ("We have never invoked the fair-cross-section principle to invalidate the use of ... peremptory challenges to prospective jurors, or to require petit juries, as opposed to jury panels or venires, to reflect the composition of the community at large"). Any racially discriminatory effect of excluding those jurors who were acquainted with Govan would clearly be incidental and hence insufficient to satisfy the third prong of the Batson test.[4]
In surveying the record to determine whether any other facts and circumstances support Govan's claim, the case of Dennis v. State is instructive. In Dennis, 555 So.2d at 681, this Court held that a defendant had not made a prima facie showing of discrimination where the prosecutor exercised five peremptory challenges against blacks, both the prosecution and defense had several challenges left, numerous potential black jurors were left uncalled, and one black juror was in the box. In the instant case, the prosecution exercised a total of only three challenges and, as in Dennis, there was one black juror in the box. The record does not indicate how many challenges the defense exercised. The Court in Dennis further noted: "Here the defendant merely stated that the prosecutor had exercised five of his seven peremptory *431 challenges against blacks, and then he asserted, `We would raise discrimination.'" Dennis, 555 So.2d at 681. The Court held that defendant had "failed to meet his burden of proof in demonstrating that the prosecution exercised his peremptory challenges in a racially discriminatory manner." Id.
In the absence of any facts or circumstances which would tend to show that the prosecution excluded jurors on account of their race, Govan's Batson claim must fail.

II. WAS THE VERDICT AGAINST THE WEIGHT OF THE EVIDENCE?
The Appellant's Brief devotes only ten lines to the weight-of-evidence issue. Govan merely states, in essence, that witnesses for the defense disputed the state's proof. Further, Govan cites no supportive authority in either of his briefs. In the absence of meaningful argument and citation of authority, this Court generally will not consider the assignment of error. Estes v. State, 533 So.2d 437, 440 (Miss. 1988); Crenshaw v. State, 520 So.2d 131, 135 (Miss. 1988); Harris v. State, 386 So.2d 393, 396 (Miss. 1980); Ramseur v. State, 368 So.2d 842, 844 (Miss. 1979); Bickcom v. State, 286 So.2d 823, 824 (Miss. 1973); Bennett v. State, 211 So.2d 520, 527 (Miss. 1968); Bridges v. State, 154 Miss. 489, 493, 122 So. 533, 534 (1929).

CONCLUSION
Govan has failed to establish a prima facie case of racial discrimination in jury selection. Further, the appellant does not seriously assert (and the record does not reveal) any other grounds for reversal. Accordingly, Govan's conviction and sentence are hereby affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BANKS, JJ., concur.
NOTES
[1] Govan noted that he attended a segregated secondary school in the 1960's and, since he worked in another county, he had no white work contacts in the county of his residence.
[2] In Powers v. Ohio, 499 U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the United States Supreme Court broadened the first prong of the Batson test by holding that a white defendant has standing to challenge the exclusion of prospective black jurors. The Court in Powers proceeded on the premise that not only does a defendant have a constitutional right to a jury whose members are selected by nondiscriminatory criteria, but the jurors themselves have a right under the Fourteenth Amendment Equal Protection Clause and under 18 U.S.C. § 243 not to be excluded from jury service on the basis of race. The Court held that a defendant had standing to raise the discriminatory exclusion of potential jurors of a different race than himself because (1) the defendant has a concrete interest in vindicating the jurors' rights since the exclusion casts doubt on the integrity of the judicial process; (2) the defendant will be an effective proponent of the jurors' rights since a finding of discrimination in the selection process may lead to a reversal of the defendant's conviction; and (3) excluded jurors will generally be insufficiently motivated to bring suit to vindicate their own rights. Powers, 499 U.S. at ___, 111 S.Ct. at 1370-73, 113 L.Ed.2d at 425-28.

In the case sub judice, this Court is not called upon to address the issue decided in Powers because both Govan and the excluded jurors are members of the black race.
[3] Although the Batson test arose in the criminal context, the United States Supreme Court recently applied it to the discriminatory exclusion of jurors in a civil trial. See Edmonson v. Leesville Concrete Co., 500 U.S. ___, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).
[4] This is not to say that criteria which have a disparate effect on a particular race will always be considered "incidental." For example, a prosecutor asserting that he distrusts people with mustaches should be viewed with suspicion where it is demonstrated that blacks, for example, have a much greater tendency to have a mustache than whites. Moreover, here, the prosecutor articulated reasons other than acquaintance with defendant for excusing the jurors in question. Under a different set of circumstances, insignificant acquaintance with the accused may not be racially neutral.