## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 1999-KA-01816-SCT

*MARCUS JOHNSON a/k/a MARCUS HUNT a/k/a MARCUS J. HUNT*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/24/1999 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RABUN JONES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | FRANK CARLTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/23/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/13/2001 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Marcus Johnson was convicted of armed robbery and conspiracy to commit armed robbery on August 18, 1999 and was sentenced to 5 years for the conspiracy to commit armed robbery and a consecutive 20 year sentence for the armed robbery to be served in the custody of the Mississippi Department of Corrections. Following the denial of his motion for a new trial and judgment N.O.V., Johnson appeals to this Court contending that the State peremptorily struck prospective jurors for racially discriminatory reasons, that the trial court erred in refusing his proposed jury instruction concerning the intent necessary to join a conspiracy, and that the trial court's sentence was harsh and imposed because he went to trial in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article 3 of the Mississippi Constitution. Finding no reversible error, we affirm the trial court.

### FACTS AND PROCEEDINGS BELOW

¶2. On February 17, 1999, Johnson, after visiting his child and girlfriend at Delta Regional Medical Center, met with Ray Winter and Jerry Simulton and went to a local bar in Greenville. Quintarus Brown, the victim in this case, was also at the bar that evening, and Johnson and the other two men saw him there when they arrived. After they talked for a while, they all left in Winter's vehicle. According to Brown's testimony, Brown sat on the back seat of the vehicle behind the driver and next to Johnson. While the car was in route, Johnson pulled out a gun, aimed it at Brown, and said, "Give me all your money, all your jewelry. I just want my $65.00 you owe me." Brown testified that he denied owing Johnson any money, but gave Johnson the money he had at the time, which was $43.00. Brown then heard Johnson say, "Carry him to Northgate so I

can kill him," and at that time, Brown began to exit the vehicle while it was still in motion.

¶3. Brown testified that he could not recall what happened next. He testified that either he and Johnson initially began struggling for the pistol and Winter, who was in the front seat, turned around and sprayed mace on them, or while Johnson was pointing the gun at Brown, Winter turned and sprayed mace on the men and then a struggle for the gun ensued. Whichever is the case, after this struggle with Johnson over the gun, both men in the front seat struggled with Brown and attempted to get the gun. At some point during this second struggle, Brown opened the back door of the vehicle and leaned out. Brown saw a policeman ahead at an intersection and, because the vehicle was moving slowly, he exited the vehicle. Brown testified that Johnson then threw his gun out of the car into a ditch. The police pulled Winter's vehicle over, conducted a felony stop, and the men were arrested.

¶4. Johnson's testimony was quite different than Brown's. Johnson testified that he had loaned his mother's lawnmower to Brown, and Brown sold the mower. On February 17th when the men were at the local bar, Johnson asked Brown for $65.00 - the value of the lawnmower. Johnson testified that he asked for the money almost every time he saw Brown and that he saw Brown at least every week. When all four men left the bar, Brown asked them if they would take him to Tucker Street. Once they began driving toward Tucker Street, Brown pulled out a bag of marijuana and told Johnson that he would sell some of it to pay for the lawnmower. Also according to Johnson's testimony, he and Ray Winter agreed to get Brown in the car, take his money and go to Wisconsin. Johnson stated that Winter was going to mace Brown with pepper spray, and that he ended up with the gun, but had no intention to use it to get Brown's money.

¶5. When Johnson saw Brown's marijuana, he grabbed it from Brown, and Brown saw Johnson's gun lying between Johnson's legs and grabbed for it. At that point in time, a "tussle" for the gun ensued. During this tussle, Winter turned in the front seat and sprayed pepper spray on Johnson and Brown. Before the police officers arrived, Johnson threw the gun and marijuana in the front seat of the vehicle. When the men were arrested, Johnson was searched, and the police found forty-three dollars in Johnson's sock. When questioned about where the money came from, Johnson stated that he never took any money from Brown that evening.

¶6. The police uncovered 6 bags of marijuana in the front seat, a can of mace in the rear seat, and a box of .25 caliber shells in the glove compartment during an inventory search. The police searched around the vehicle and found a small caliber handgun lying on the street. Johnson was tried and convicted of armed robbery and conspiracy to commit armed robbery. He was sentenced to 25 years in the custody of the Mississippi Department of Corrections for armed robbery and for conspiracy to commit armed robbery.

¶7. Aggrieved by the judgment of the circuit court, Johnson raises the following issues to this Court on appeal:

> **I. WHETHER THE TRIAL COURT VIOLATED *BATSON v. KENTUCKY* AND ERRED WHEN IT ALLOWED THE STATE TO EXERCISE EIGHT OF ITS TEN PEREMPTORY CHALLENGES ON AFRICAN AMERICAN MALES WITHOUT REQUIRING THE STATE TO SET FORTH ANY RACE NEUTRAL GROUNDS FOR SUCH A CHALLENGE?**
>
> **II. WHETHER THE TRIAL COURT ERRED IN NOT ALLOWING JURY INSTRUCTION D-12 TO BE PRESENTED TO THE JURY WHEN THAT**

**INSTRUCTION DEALT WITH INTENT, AND WHEN THE TRIAL COURT ALLOWED ANOTHER COMPARABLE JURY INSTRUCTION TO BE PRESENTED TO THE JURY?**

**III. WHETHER THE TRIAL COURT ERRED AND VIOLATED THE DEFENDANT'S RIGHTS UNDER THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS WHEN IT SENTENCED THE DEFENDANT TO TWENTY-FIVE YEARS IN PRISON?**

**DISCUSSION**

**I.**

¶8. Johnson argues that the State violated *Batson v. Kentucky* when it used eight of its ten peremptory challenges to exclude African American jurors from the jury panel. The *Batson* doctrine is not concerned with a racial, gender, or ethnic balance on petit juries, and the doctrine does not hold that a party is entitled to a jury composed of or including members of a cognizable group. Rather, it is concerned exclusively with discriminatory intent on the part of the lawyer against whose peremptory strikes the objection is interposed. *See Powers v. Ohio*, 499 U.S. 400, 406, 411, 111 S.Ct. 1364, 113 L. Ed. 2d 411 (1991); *Batson v. Kentucky*, 476 U.S. 79, 93-94, 106 S.Ct. 1712, 90 L. Ed. 2d 69 (1986).

¶9. This Court has held that, "[p]roportional representation of [members of cognizable groups] on a jury is not required." *Harris v. State*, 576 So.2d 1262, 1264 (Miss. 1991). This Court has further stated that defendants are not entitled to a jury of any particular composition. *Id*. Under the *Batson* doctrine, the accused has the right to be tried by a jury selected on a non-discriminatory basis, but the petit jury actually chosen need not mirror the community. *Britt v. State*, 520 So.2d 1377, 1379 (Miss. 1988). Additionally, this Court has held that a trial court's determination of whether a showing of racial discrimination has been made will not be reversed unless it is "clearly, erroneous, or against the overwhelming weight of the evidence." *Stewart v. State*, 662 So.2d 552, 558 (Miss. 1995). *Accord*, *Gary v. State*, 760 So.2d 743, 748 (Miss. 2000).

¶10. This Court has stated on numerous occasions that a trial court's determinations under *Batson* are afforded great deference because they are largely based on credibility. *See, e.g.*, *Puckett v. State*, 788 So. 2d 752, 756 (Miss. 2001), *McGilberry v. State*, 741 So.2d 894, 923 (Miss. 1999); *Coleman v. State*, 697 So.2d 777, 785 (Miss. 1997). In reviewing an alleged *Batson* violation, this Court will not reverse factual findings relating to a *Batson* challenge unless they are clearly erroneous. *Puckett*, 788 So. 2d at 756; *McGilberry*, 741 So.2d at 923.

¶11. Johnson argues that the trial court's decision in rejecting his *Batson* challenge was "clearly erroneous." He cites to *Batson*, *Stewart*, and *Gary* as his authority for this assertion. Johnson also cites to *Puckett v. State*, 737 So.2d 322 (Miss. 1999), in which this Court recognized that the *Batson* doctrine had been expanded to include objections to peremptory challenges whether or not the excluded jurors share that same race. *Id*. at 334. In the case at bar, after challenges for cause were made, the jury panel consisted of seventeen African American panelists and eighteen white panelists. During the peremptory challenge phase of jury selection, the State peremptorily challenged eight African American panelists and two white panelists. A *Batson* challenge was raised by Johnson, but the trial court determined that no prima facie case of discrimination had been made because the defense made peremptory challenges excluding white panelists and still had a challenge. Also during jury selection, the State raised a *Batson* challenge because the

defense struck several white panelists. The trial court stated that the defense had no discriminatory intent in excluding the white panelists and ruled that no prima facie case had been made thereby denying the challenge. When all the challenges were made by both parties, the final petit jury consisted of eight African American jurors and four white jurors.

¶12. In *Lester v. State*, 692 So.2d 755, 794 (Miss. 1997),*overruled on other grounds,* ***Weatherspoon v. State***, 732 So.2d 58 (Miss. 1999), and in *Dennis v. State*, 555 So.2d 679, 681 (Miss. 1989), this Court held that the trial court's determination of a lack of a prima facie case of discrimination was not clearly erroneous. In *Dennis*, five of the seven peremptory challenges were used against African Americans. *Id*. at 681. In *Lester*, six of the nine peremptory challenges were used against African Americans. *Lester*, 692 So.2d at 794. This Court held in *Lester* that because the State peremptorily challenged three African American women, three African American males, three white males, had three unused challenges, and the fact that the final jury panel only lost two percent of African Americans from the initial panel, the State had not made its challenges based upon race and the trial judge's ruling was not clearly erroneous. *Id*. at 794.

¶13. The facts here are similar to the facts in *Dennis* and *Lester*. The State made its peremptory challenges, excluded eight African American jurors and two white jurors, and had one challenge left. When the *Batson* challenge was issued by the defense, the trial court found that there was no evidence or purpose for intent to use peremptory strikes by the State with a purpose to discriminate against blacks serving on the jury.

¶14. Additionally, regarding the initial panel of jurors versus the final selected panel, looking at the overall race of the final panel alone, this case is distant in that African Americans were virtually equal in number on the panel after jury members initially had been excused for cause (seventeen African Americans and eighteen Whites), as opposed to the final panel where the number of African Americans doubled the number of whites (eight African Americans and four Whites). When looking at the initial panel of jurors, the colloquy between the judge and the both parties in this case, and the final petit jury, it is clear that the trial judge's actions were not clearly erroneous. Even though the State was not required to articulate race neutral reasons for striking jurors from the panel, it is also clear that the State had no discriminatory intent in striking them.

¶15. Regarding the counting of petit jurors, there is a discrepancy between the trial record (9 African American jurors and 3 white), and the Washington County Circuit Court documents (8 African American jurors and 4 white), but counting the jurors either way, there was still no discriminatory intent on the part of the State, and the trial court committed no errors in determining that both sides had no discriminatory intent in the strikes they made. This issue is without merit.

## II.

¶16. Johnson next raises that the trial court committed reversible error when it refused his proposed jury instruction D-12 on the elements of conspiracy to commit armed robbery. The law in this state is clear regarding jury instructions. This Court's standard of review in reviewing jury instructions is as follows: This Court does not review instructions in isolation. *Malone v. State*, 486 So.2d 360, 365 (Miss. 1986). If the instructions given provide correct statements of the law and are supported by the evidence, there is no prejudice to the defendant. *Sanders v. State*, 313 So.2d 398, 401 (Miss. 1975). In determining whether reversible error lies in the granting or refusal of various instructions, the instructions actually given must be

read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. *Fielder v. Magnolia Beverage Co.*, 757 So.2d 925, 929 (Miss. 1999). Therefore the question arises: "In lieu of instruction D-12, was there another jury instruction, or set of jury instructions, that fairly and correctly announced the law of conspiracy?"

¶17. The elements pertaining to the law of conspiracy are found in Miss Code Ann. § 97-1-1 which makes it a crime "[i]f two or more people conspire . . .[t]o commit a crime. . . ." Johnson's proposed jury instruction D-12 that was refused, read as follows:

> Even though you may find beyond a reasonable doubt in this case that Ray Winter and the defendant, Marcus Johnson a/k/a Marcus Hunt, acted in concert in allegedly depriving Quintarus Brown of property, you may nevertheless still not convict Marcus Johnson of conspiracy to commit armed robbery unless you also find beyond a reasonable doubt each of the following: a) that Marcus Johnson agreed to either expressly or by implication to engage in the commission of an armed robbery on Quintarus Brown; and

> b) That he knowingly entered into a common plan, if any, with the intent to further the accomplishment of the agreement. If the state has failed to prove beyond a reasonable doubt any element of the offense of the offense to commit armed robbery, then it is your duty to find Marcus Johnson not guilty.

The jury instruction that was given, instruction S-1, read as follows:

> The Court instructs that a conspiracy is an agreement or understanding between two or more people to commit a crime. In establishing a conspiracy, the state is never required to prove in express terms an agreement between the parties to commit a crime, but it is sufficient when the evidence proves beyond a reasonable doubt, from all of the facts and circumstances, including any acts, statements or conduct of the alleged conspirators, that there was a common design or understood purpose between the parties to commit the crime.

¶18. Johnson alleges that when the trial court rejected jury instruction D-12 it committed reversible error because the existing instruction, S-1, did not include language about "intent." Johnson cites to *Taylor v. State*, 536 So.2d 1326 (Miss. 1988), and states that in *Taylor*, this Court "clearly stated that the crime of conspiracy requires, as one of its elements, an intention on the part of the defendant to further the common and unlawful purpose." While it is indeed true that this Court has held that in order for a person to be convicted of conspiracy, that person must recognize that he is entering into a common plan with another and he must intend to further a common and unlawful purpose, Johnson erroneously relies upon the holding of *Taylor*. *See James v. State*, 481 So.2d 805, 808-10 (Miss. 1985); *Griffin v. State*, 480 So.2d 1124, 1126 (Miss. 1985). This Court did not address the issue of intent in *Taylor*. Rather, the Court addressed the issues outlined below.

¶19. In *Taylor*, the defendant was convicted of conspiracy to sell cocaine. Johnson argues that this Court in *Taylor* used the required conspiracy element of intent to determine whether the defendant was guilty of conspiracy. *Id*. at 1326. However, this Court did not address the intent issue in *Taylor* and in the instruction given to the jury the words "intent" or "intention" were not used, but similar words that would imply an intention between parties were used and other elements were addressed regarding the conspiracy charge. In *Taylor,* this Court parsed out the difference between the words "infer" and "imply" as it related to a conspiracy jury instruction and determined that the two words were legally synonymous. *Id*. at 1328.

Moreover, this Court recognized that Taylor knew that a conspiracy need not be established by direct evidence, but that circumstances may suffice. *Id*. at 1328. The Court clearly stated that the requirement for a conspiracy charge is that the accused combines with one or more persons to accomplish an unlawful purpose. *Id*. at 1326. The Court affirmed Taylor's conviction because the Court determined that the trial court did not commit reversible error when it allowed the jury instruction with the word "imply" in it. *Id*. at 1327.

¶20. We affirm the circuit court's action as in *Taylor*, but for a different reason. The jury in the case at bar determined that Johnson conspired with another (Ray Winter) to accomplish an unlawful purpose (rob another at gunpoint). The jurors surveyed the evidence presented to them and determined that Johnson conspired with Winter to rob Brown and concluded that Johnson committed conspiracy beyond a reasonable doubt. Instruction S-1 was appropriate for the trial court to use in this case. The language in S-1, "that there was a common design or understood purpose between the parties to commit the crime," clearly indicates an intention to commit an unlawful act. When the trial court and both parties considered instruction D-12, the court refused instruction D-12 because it was repetitive to instruction S-1. Instruction S-1 was an appropriate instruction fairly and clearly announcing the elements of conspiracy, and as such, the trial court did not err when it refused instruction D-12. Therefore, this issue is without merit.

### III.

¶21. Finally Johnson argues that the trial court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article 3 of the Mississippi Constitution. Because Johnson requested a jury trial, he argues that the trial court harshly sentenced him to twenty-five years in the Mississippi Department of Corrections. Johnson argues *Fermo v. State*, 370 So.2d 930, 932 (Miss. 1979), and *Sanders v. State*, 440 So.2d 278, 287 (Miss. 1983), are applicable here where the Court held that a trial court is in error when it sentences a defendant to a harsher sentence because that defendant insists on being put to trial.

¶22. Additionally, Johnson cites to the trial record where the trial court stated:

> When the defendant comes to the court and enters a plea of guilty, then the court has broad latitude to be lenient, but when the citizens of this country have come forward and sat as a jury and the state has taken up the time of trial, then the court cannot be lenient because what would be the purpose of having a trial if once the citizens have convicted the defendant, the court has not imposed a sentence of time in the penitentiary . . . .

Johnson bases his argument on the trial court's language and states that because he was sentenced to five years, the maximum sentence under the conspiracy count, and twenty years under the armed robbery count, that his constitutional rights were violated. However, following the above statement, the trial court identified the factors that led to the court's decision. These factors included the use of a handgun, this robbery did not endanger the public, but merely the occupants of the car, and the sentencing statute includes a sentence for up to less than life imprisonment.

¶23. This Court has held that when sentences are within the guidelines provided for punishment by the Legislature, they will not be considered cruel and unusual punishment. *See Stromas v. State*, 618 So.2d 116, 123-24 (Miss. 1993). The statutory sentencing guideline for armed robbery in this state is life in prison. Johnson's life expectancy was forty to fifty years. By sentencing Johnson to a combined sentence of

twenty-five years in the Mississippi Department of Corrections, the trial court did not violate Johnson's rights. In fact, the court was lenient on Johnson. As stated by the trial court:

> And I'm going to take into account several things in this case because the sentence by the jury for armed robbery is life in the penitentiary, and by the court the sentence is a term of years less than life, so I would say that his life expectancy is probably on the range of 45 to 50 years, so that's what he's eligible to receive is 45- - 45 to 50 years in the penitentiary, which I'm not going to impose that sentence on the defendant. The other factor that I'm taking into account regardless is regardless of record and regardless of what else he's done, firearms, crime with firearms just cannot be tolerated in this community. And I'm taking into account the fact that this is the first felony. And I'm taking into account the fact that as I viewed the facts at the trial it was a robbery among acquaintances as opposed to going to a convenience store or, you know, something like that and robbing someone in an environment where members of the public were placed at risk. And having considered all those things, it's the judgment of the court that for the crime of conspiracy to commit armed robbery you be sentenced to serve the term of five years in the custody of the Mississippi Department of Corrections, and for the crime of armed robbery that you be sentenced to serve a term of twenty years in the custody of the Mississippi Department of Corrections, that the sentence in Count two run consecutive to the sentence in count one . . . .

¶24. Because the trial court sentenced Johnson to a combined sentence of twenty-five years, rather than life in the custody of the Mississippi Department of Corrections, the trial court did not commit error and violate Johnson's rights. This issue is without merit.

## CONCLUSION

¶25. For the reasons set forth above, Johnson's arguments are without merit. The trial court did not err when it determined that the State did not commit a ***Batson*** violation, that jury instruction D-12 be denied and instruction S-1 stand in its place, and that Johnson's sentence was appropriate for his actions. Therefore, the conviction and sentence of Marcus Johnson for armed robbery and conspiracy to commit armed robbery are affirmed.

¶26. **COUNT I: CONVICTION OF CONSPIRACY TO COMMIT ARMED ROBBERY AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**COUNT II: CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. THE SENTENCE IN COUNT I SHALL RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT II AND, APPELLANT SHALL PAY COURT COSTS OF $ 252.50 AND BOND FEE OF $ 200.00.**

> **PITTMAN, C.J., MILLS, WALLER, COBB, DIAZ AND EASLEY, JJ., CONCUR. BANKS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J.**

> **BANKS, PRESIDING JUSTICE, DISSENTING:**

¶27. I am compelled to dissent because, in my view, this is but another in a series of cases in which this

Court follows the path of depriving defendants in criminal cases of instructions regarding the law under the guise of the supposed "adequacy" of prosecutorial instructions which state the proposition only in terms slanted to the prosecution.

¶28. Here Instruction S-1 speaks in terms of what the prosecution is "never required to prove." Johnson asked for an instruction to the effect that the jury was required to find actual agreement "expressly or by implication" to act in concert, not simply that they acted in concert. There is simply nothing wrong with the Johnson's proffered instruction, and it should, in fairness, have been given.

¶29. The majority proceeds to examine *Taylor v. State*, 536 So.2d 1326 (Miss. 1988) suggesting, erroneously, that the case did not address intent. Clearly it did. "Each must intend to further the common and unlawful purpose." *Id.* at 1328. The majority goes on to mix "apples and oranges" by discussing whether the evidence was sufficient to allow a jury to find intent by implication. That is simply not the point. Johnson does not argue, as the majority seems to suggest, that intent to act in concert cannot be inferred. Indeed, to repeat the obvious, the very instruction that he proffered is explicit that the jury may find agreement "expressly or by implication." Johnson simply wanted the court to tell the jury that the act and the inference are not the same. It is for the jury to decide to draw the inference from all the attendant circumstances, including the act, and the finding of conspiracy is not an ipso facto result of finding that Johnson and Winter acted. It is a fine point, but one that Johnson is entitled to have submitted to the jury by the court. Because the court failed to do so, I respectfully dissent.

**McRAE, P.J., JOINS THIS OPINION.**