KING, P.J.,
for the court.
¶ 1. This case involves a long-running dispute between closely related family members. On one side are Woodrow Vinson and his wife, Kernith. On the other side are their son, Harry Vinson, and Harry’s son and Woodrow and Kernith’s grandson, Brad Vinson. Woodrow Vinson is now deceased.
PROCEDURAL HISTORY AND FACTS
¶ 2. On January 6, 1995, Harry Vinson executed a deed of trust on real property to secure a loan from his parents, Woodrow and Kernith, in the sum of $80,000. Woodrow and Kernith were the beneficiaries and Harry’s son, Brad, was the original trustee. The terms of the promissory note secured by the deed of trust required monthly payments of $1,214 to Woodrow *1205 and Kernith. A year later, on January 16, 1996, Harry and Brad picked up Woodrow and Kernith and drove them to Harry’s home. At Harry’s home Woodrow and Kernith were given pre-prepared powers of attorney to sign which appointed Harry attorney-in-fact and agent for Woodrow and Kernith. The next day Harry signed Woodrow and Kernith’s names to certain warranty deeds conveying property out of Woodrow and Kernith’s names and into either Harry’s name or the name of a company owned by Harry, Luxury Homes, Inc. On that same day Harry signed Woodrow and Kernith’s names to a cancellation of the deed of trust Harry had executed a year earlier. Over the course of the next two days Harry and Brad withdrew tens of thousands of dollars from Woodrow and Kernith’s bank accounts pursuant to the powers of attorney. Harry and Brad also transferred funds from bank accounts owned by Woodrow and Kernith to an account held in the names of Harry, Brad and Woodrow, which required two signatures to effect a withdrawal, essentially depriving Woodrow and Kernith of all access to these funds without the approval of Harry or Brad.
¶ 3. When Woodrow and Kernith learned of Harry and Brad’s actions, they brought suit in the Lee County Chancery Court seeking to rescind the transactions and injunctive relief from harassment by Harry and Brad. Judgment was entered holding that the actions of Harry and Brad were null and void ab initio. The judgment also enjoined Harry and Brad from any unsolicited contact with Woodrow and Kernith and awarded Woodrow and Kernith attorneys’ fees. Harry and Brad, pro se, filed two separate but substantially identical petitions to reconsider and set aside the court’s opinion of October 6, 1998, and its final decree of October 13, 1998. Both petitions were summarily denied in a November 18, 1998 order. Harry and Brad, pro se, filed their appeal and have set forth the following verbatim statement of the issues:
1. The trial court erred appointing conservator for Woodrow and Kernith Vinson.
2. The trial court erred finding Harry W Vinson breached fiduciary duty by not acting in the best interest of Woodrow and Kernith Vinson.
3. The trial court erred awarding sanctions and attorney fees against Harry W Vinson and Brad Vinson.
Finding no reversible error, the chancery court judgment is affirmed.
ANALYSIS
¶ 4. Harry and Brad’s notice of appeal specifically states that they are appealing the November 18, 1998 order denying their petitions to reconsider and set aside the court’s opinion of October 6, 1998 and final decree of October 13, 1998. The petitions were each filed well within ten days of the entry of the opinion and decree, consequently, our review of this matter is in the nature of the denial of a Mississippi Rules of Civil Procedure 59(e) motion.
¶ 5. An appeal from the denial of a Rule 59 motion may address the merits of the entire underlying proceeding, and review of a trial judge’s denial of a Rule 59 motion is limited to abuse of discretion. Bang v. Pittman, 749 So.2d 47, 52(¶28) (Miss.1999); Dissolution of Sanford v. Sanford, 749 So.2d 353, 357(¶ 16) (Miss.Ct.App.1999).
1. Did the trial court err in appointing a conservator for Woodrow and Kernith?
¶ 6. A review of the record indicates that there was no conservator appointed for Woodrow and Kernith Vinson during the proceedings constituting the basis for this appeal. There is some indication that an appointment was made in a *1206 different, and at one time, consolidated proceeding in the months following the filing of the notice of this appeal. Consequently, this matter is not properly before this Court and will not be considered.
2. Did the chancellor err in finding a breach of fiduciary duty?
3. Did the chancellor err in awarding attorneys’ fees?
¶ 7. These issues were dealt with in combination by the chancellor and we find it expeditious to handle them in similar fashion in this appeal. In finding that Harx*y and Brad had breached their fiduciary duty to Woodrow and Kernith, the chancellor held as follows:
The general public and most first year law students know that the course of action of Harry and Brad Vinson is wrong, violates nearly every principle of responsibilities of fiduciaries and used willful and wanton acts to gain a financial upper hand at the expense of Woodrow W. Vinson and Kernith B. Vinson. Substantial requests for fees have been submitted by counsel for Rita Vinson and counsel for Woodrow and Kernith B. Vinson. The only question is what is reasonable to be paid by the Defendants. Generally, counsel fees to the Plaintiff are not chargeable to the Defendants in the absence of a statute or rule or case law. The only way that the Defendants in this case may be required to pay the Plaintiffs fees is if their conduct is of such a nature that an award of punitive damages could have been imposed by the Court. This Court is of the opinion that the acts of the Defendants, Harry W. Vinson and Brad Vinson, are such that they should be subjected to the punishment of paying counsel fees in order to deter the offensive conduct.
¶ 8. In their motions for reconsideration, Harry and Brad argued that there was no breach of fiduciary duty because they acted pursuant to a valid power of attorney which the chancellor had no authority to void. They further argued that the chancery court lacked jurisdiction over the matter of attorneys’ fees and any actions taken pursuant to the power of attorney. However, they have neither cited nor argued any case authority or other legal authority for their position in either their motions or in their appellate brief.
¶ 9. The Mississippi Supreme Court has held that in the absence of meaningful argument and citation of authority, appellate courts in this state generally will not consider the assignment of error. Govan v. State, 591 So.2d 428, 431 (Miss.1991). See also Stidham v. State, 750 So.2d 1238 (¶ 22) (Miss.2000) (the appellant has a duty to show by plausible argument with supporting authorities how the lower court erred); Rush v. State, 749 So.2d 1024(¶ 7) (Miss.1999) (appellate court did not address five issues raised on appeal where appellant did not discuss or cite authority); Sumrall v. State, 758 So.2d 1091(¶ 6) (Miss.Ct.App.2000) (an issue not argued in brief is considered abandoned and waived). Even considering the issues alternatively on the merits, we find that they are without merit for we can find no abuse of discretion on the part of the chancellor.
¶10. THE JUDGMENT OF THE CHANCERY COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED AGAINST THE APPELLANTS.
McMILLIN, C.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. SOUTHWICK, P.J., CONCURS IN RESULT ONLY.