# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-KA-01716-SCT

*THOMAS L. FERRELL*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 9/22/2000 |
| TRIAL JUDGE: | HON. R. I. PRICHARD, III |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | J. BOYCE HOLLEMAN |
| | TIM C. HOLLEMAN |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | CLAIBORNE McDONALD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/14/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/4/2002 |

## BEFORE SMITH, P.J., WALLER AND COBB, JJ.

### WALLER, JUSTICE, FOR THE COURT:

¶1. Thomas L. Ferrell was charged by a Pearl River County, Mississippi, grand jury with the murder of Jonathan Scott "Scotty" Watkins under Miss. Code Ann. § 97-3-19. He was convicted of manslaughter and sentenced to 20 years in the custody of the Mississippi Department of Corrections.[1] On appeal, we reversed and remanded for a new trial. The second trial was held in Lamar County, Mississippi, after a change of venue due to pretrial publicity. The jury again returned a verdict of manslaughter, and Ferrell was again sentenced to 20 years in the custody of the Mississippi Department of Corrections.

¶2. On appeal Ferrell contends that the verdict was against the overwhelming weight of the evidence and that he was given a harsher sentence after having the first verdict and sentence reversed on appeal for having successfully exercised his constitutional right to access to the courts. We find no merit in these claims and affirm.

## FACTS

¶3. Thomas L. Ferrell and his wife, Jennifer, hosted a backyard barbecue for several friends. Scotty Watkins, although uninvited, appeared at the party with his girlfriend. About 10:45 that night, a police

officer arrived at the Ferrell home to check out neighbors' complaints about loud music. He noted that Watkins was "extremely intoxicated."

¶4. C. J. Robinson testified that Watkins was "starting to get loaded" and was showing other party guests how to do choke holds. Later, Watkins told Ferrell to let him have Ferrell's gun and he would kill everybody there. He threatened Ferrell. Watkins got into a fight with Narada Dasal, and Ferrell broke the fight up and told Watkins to leave. After Ferrell told Watkins to leave several times to no avail, Ferrell fired several warning shots with his handgun. Ferrell and Watkins began scuffling on the floor. Watkins tried to get the shovel to hit Ferrell with it. They rolled down the kitchen steps. Watkins was on top of Ferrell when the gun went off.

¶5. Jennifer Ferrell, the appellant's wife, testified that Watkins, who was uninvited to the party, was drunk, and "liked to fight," hurt one of the guests' feelings and she left. After Ferrell asked Watkins to leave, they began to yell at each other, and Watkins said, "[G]o ahead and take your damn gun out and I'll shoot every M.F. in here." She heard several gunshots and found Ferrell and Watkins fighting in the kitchen. She went out on the front porch and then went to the back yard. She saw Watkins on top of Ferrell outside the steps. Watkins was choking Ferrell, and then the gun went off. Ferrell was lying on his back, and Watkins was crouched over him, choking him, when the gun was fired.

¶6. Bryan Patterson testified that the fight moved to the backyard when Ferrell and Watkins rolled down the kitchen steps. Ferrell was on the bottom, with Watkins on top. Watkins rolled off Ferrell and jumped up. Ferrell jumped up and pulled the gun out. Both men were standing when the gun was fired. On cross-examination, Patterson stated that Watkins was standing and Ferrell was in the process of standing up when he fired the gun. The men were five or six feet apart. Watkins was not armed, and Patterson stated that he never saw Watkins with a baseball bat and that Watkins never choked Ferrell.

¶7. Vyron Hayden testified that Ferrell was standing in the kitchen door leading to the living room and Watkins was standing in the kitchen when he saw them arguing. Hayden was outside when he heard gunshots inside the house. Hayden went inside and saw Ferrell hit Watkins with a shovel or a baseball bat. Watkins took the object away from Ferrell, and they continued to fistfight. They stumbled down the kitchen steps, both of them stood up and continued to fight. Watkins hit Ferrell a few times, and Ferrell fell backwards. He caught himself and stood back up. As he was standing up, he pulled out a gun and shot Watkins. Watkins was not armed. He never saw Watkins choke Ferrell.

¶8. Narada Dasal testified that after Ferrell and Watkins were fighting for a short while, Ferrell retrieved a shovel and "attacked" Watkins. Watkins got the shovel away from him, and they continued to fight with their fists. They rolled out the back door. As Ferrell was getting up, Watkins was reeling backwards, and Ferrell shot him. Watkins was not armed. After the shooting, Ferrell placed the gun under the couch in the living room. He then called 911 and stated, "I just shot somebody at my house. He's trying to kill me." When he was arrested, Ferrell stated that he did not mean to shoot Watkins, but he was forced to shoot Watkins because Watkins was trying to kill him. Watkins showed the arresting officer where he had put the gun.

¶9. When other officers arrived, they found two people performing CPR on Watkins, who was lying on the ground in the back yard. There was a gunshot wound to the left side of the chest, just beside the nipple. There was no pulse, and the pupils were unresponsive. After the paramedics removed Watkins, there was a large pool of blood where he had lain. There was a trail of blood from the house to where Watkins had lain. Watkins died later that night.

¶10. The officers found several spent casings, bullets and bullet holes in the house where Ferrell had fired the warning shots. There was an open box of ammunition with nine rounds left in it on an end table in the living room. A small shovel was found inside the doorway to the kitchen on the floor. They found no baseball bat that night. However, when officers returned to the house the next day, they found a baseball bat.

¶11. A sheriff's deputy testified that the night of the shooting, law enforcement officers took pictures and a videotape of the entire house. They found a baseball bat in the bedroom and a chain saw and a weedeater in the utility room. This testimony was supported by photographs and the videotape. The next day when law enforcement officers returned to the house, the chain saw and the weedeater were missing from the utility room and the exact same baseball bat that was in the bedroom the night before was in the utility room.

¶12. Stephen T. Hayne, M. D., a forensic pathologist who performed the autopsy on Watkins's body, testified that Watkins was 5'7" tall and weighed 155 pounds.[2] There were three types of injuries on the body: contusions (bruises) on the right leg and the left knee; abrasions (scrapes) on the forehead, the nose, the lower lip, the right ear, by the right eye, on the right and left arms, near the left shoulder, the abdominal area, and both legs. Some of these wounds were consistent with defensive posturing injuries. Dr. Hayne also found a wound from a gunshot which entered the chest and exited the back. The gunshot moved down at an approximate 20-25 degree angle and to the left from the chest to the back. To achieve that angle, the shooter must have been above and slightly right of the target. It was "highly unlikely" for the angle to have been achieved by the shooter lying on the ground and the target being on top of him and strangling him. Dr. Hayne determined the wound to have been created by a near contact gunshot. Fragments of unburned powder were embedded in the skin surface, a condition that is known as "tattooing." The gun was approximately twelve inches away from Watkins when it was fired.

### DISCUSSION

### I. WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?

¶13. Our well-established standard of review for a challenge to the sufficiency of evidence is as follows:

> [W]e must, with respect to each element of the offense, consider all of the evidence - not just the evidence which supports the case for prosecution--in the light most favorable to the verdict. The credible evidence which is consistent with the guilty must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonably and fair-minded jurors could only find the accused not guilty.

*Gleeton v. State*, 716 So. 2d 1083, 1087 (Miss. 1998) (quoting **Wetz v. State**, 503 So. 2d 803, 808 (Miss. 1987) (citations omitted).

¶14. Ferrell contends that the physical evidence proved that Watkins was on top of Ferrell at the time the fatal shot was fired. However, Dr. Hayne discounted this theory because the gun was no closer than 10 to 12 inches from Watkins's body when it was fired, and stated that it was very unlikely that the angle of the

path of the bullet could have been made if Watkins had been on top of Ferrell.

¶15. Ferrell recklessly fired his gun in his own house even though his child was sleeping nearby and then reloaded. Watkins did not have a weapon. Several witnesses testified that Watkins and Ferrell were 4 to 5 feet apart when the gun was fired. Immediately after the shooting, Ferrell placed the gun under the sofa in the living room.

¶16. Based on this evidence, we find that reasonable and fair-minded jurors could not have found that Ferrell acted in justifiable self-defense. Although Robinson and Jennifer Ferrell testified that Watkins was on top of Ferrell and choking Ferrell when the gun went off, all of the other witnesses testified that the two men were standing up and that Watkins never choked Ferrell. According to Robinson, Watkins attacked Ferrell with a shovel or baseball bat, but every other witness testified that Ferrell hit Watkins in the head with a shovel and all witnesses testified that Watkins was unarmed. Sheriff's Department personnel testified that items in the utility room were moved around and that a bat had appeared in the utility room the morning after the shooting.

¶17. The trial court adequately instructed the jury on Ferrell's theory of self-defense. After reviewing all of the evidence, the jury chose not to believe Ferrell's witnesses' version of what happened. This claim is without merit.

## II. WAS THE IMPOSED SENTENCE UNCONSTITUTIONALLY HARSH?

¶18. Ferrell argues that the trial court violated his rights under the United States and Mississippi Constitutions. He contends that the trial court harshly sentenced him to 20 years in the custody of the Mississippi Department of Corrections because he was successful in overturning his first conviction on appeal, and that he was sentenced to only 15 years for the first conviction.

¶19. We first note that this claim is procedurally barred. Ferrell did not raise this issue at the sentencing hearing or in his motion for new trial.

¶20. However, considering the merits of the claim, we have held that when sentences are within the guidelines provided for punishment by the Legislature, they will not be considered cruel and unusual punishment. *Johnson v. State*, 792 So. 2d 253, 260 (Miss. 2001); *Stromas v. State*, 618 So. 2d 116, 123-24 (Miss. 1993).

¶21. The sentencing guideline for manslaughter in this State is two to twenty years' imprisonment in the custody of the Mississippi Department of Corrections. Miss. Code Ann. § 97-3-25 (2000). By sentencing Ferrell to a sentence of twenty years in the custody of the MDOC, the trial court did not violate Ferrell's rights.

¶22. To determine if a harsher sentence has been imposed due to vindictiveness, in *Ross v. State*, 480 So. 2d 1157, 1160-61 (Miss. 1986), we outlined the following considerations:

1. The imposition of a harsher sentence by a judge following a new trial and conviction for the same charge is not violative of the federal, or Mississippi's Constitution.

2. Due process of law does require that vindictiveness against a defendant for having successfully attacked his first conviction play no part in the sentence he receives after a new trial.

3. Due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

4. In order to assure that it may be determined on appeal whether such a motive was absent the following must occur:

a. The judge must affirmatively state in the record his reasons for the harsher sentence.

b. The reasons must be based upon objective information concerning identifiable conduct on the part of the defendant which occurred after the time of the original sentencing proceedings, or based upon objective information concerning events which occurred after the time of the original sentencing proceeding that may have thrown new light upon the defendant's life, health, habits, conduct or mental and moral propensities.

c. The factual data upon which the increased sentence is based must be made a part of the record.

d. This information and data upon which the judge bases his sentence may come to the judge's attention from evidence adduced at the second trial itself, from a new presentencing investigation, from the defendant's prison record, or possibly from other sources.

¶23. The sentencing order shows that the circuit court stated on the record the reasons for sentencing Ferrell to twenty years: (1) Ferrell "did not show up for sentencing on August 21, 2000, and was apprehended in Laredo, Texas, on Friday August 25, 2000;" (2) Ferrell "has not conducted himself in a proper manner, that he has shown no remorse or responsibility, has obtained two DUIs while on bond." The information regarding Ferrell's escape and two DUIs was contained in the pre-sentence report. At the sentencing hearing, Ferrell announced to the court that he did not disagree with any information in the presentence report. Even though Ferrell's wife testified that Ferrell was returning to the United States when he was apprehended, the jail warden at the Pearl River County Jail testified that United States Customs agents from Laredo informed the Sheriff's Office that Ferrell had been apprehended while crossing the border from the United States to Mexico. The trial court discounted the testimony by asking, "If his contention is to turn himself in, why would he be picked up? Why wouldn't he just turn himself in the minute he got to a U.S. agent, Customs or whoever?"

¶24. A defendant's constitutional rights are not violated when a sentencing court considers the information contained in a presentence investigation report in determining what sentence to impose. *Jackson v. State*, 551 So. 2d 132, 148-49 (Miss. 1989). In *Jackson*, we stated:

Our law has long provided that the imposition of sentence following a criminal conviction is a matter within the discretion of the Circuit Court, subject only to statutory and constitutional limitations. So long as these are not offended, we rarely interfere. Moreover, the Court is not limited to the consideration of evidence presented of record at trial when imposing sentence.

551 So. 2d at 149.

¶25. Ferrell did not dispute any of the information in the presentence report, which included information pertaining to the two DUIs and Ferrell's flight to avoid sentencing. Ferrell contends that the trial court retaliated against him because he failed to obtain his GED and get alcohol and drug treatment, the two conditions contained in the first sentencing order. Even assuming, arguendo, that Ferrell is correct, the trial

court had, and clearly stated in the record, ample objective, factual evidence of Ferrell's misconduct since the first trial to impose the twenty-year sentence. Additionally, the trial court noted that Ferrell had shown absolutely no remorse for his actions. This claim is without merit.

## CONCLUSION

¶26. For these reasons, the judgment of the Pearl River County Circuit Court is affirmed.

¶27. **CONVICTION FOR MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED.**

> **PITTMAN, C.J., SMITH, P.J., COBB, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY.**

1. Ferrell was ordered to serve 15 years of the 20-year sentence, and if he successfully completed the 15 years, as well as drug and alcohol treatment and education, the remaining 5 years would be suspended. *See Ferrell v. State*, 733 So. 2d 788 (Miss. 1999).

2. The presentence report shows that Ferrell was 5'5" tall and weighed 145 pounds. One witness opined that both Ferrell and Watkins were of equal strength because they both were brick laborers.