# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KA-00285-SCT

*PERCY LATIKER a/k/a PERCELL LATIKER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/16/2004 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM C. STENNETT |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: W. DANIEL HINCHCLIFF |
| DISTRICT ATTORNEY: | MARK DUNCAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/27/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### EN BANC:

### COBB, PRESIDING JUSTICE, FOR THE COURT:

¶1.      Percy Latiker is before the Court on appeal of his conviction in the Leake County Circuit Court where he was convicted of the sale of crack cocaine and sentenced to twelve years in the custody of the Mississippi Department of Corrections.   Latiker presents four issues, stating that the trial court erred by: denying his motion for a directed verdict at the close of the case and rejecting his argument that the jury's verdict was against the overwhelming weight of the evidence; allowing him to be prejudicially identified in court as an alleged suspect when this identification was improper; sustaining the State's hearsay objection to the introduction of documentary evidence supporting his alibi defense; and

imposing a sentence based on flawed information and unfounded grounds. Concluding that Latiker's arguments are without merit, we affirm his conviction and sentence.

## FACTS

¶2.    On December 12, 2002, undercover agent James Ragan of the Mississippi Bureau of Narcotics bought $100 worth of crack cocaine at a residence at 930 Damascus Road in Leake County, Mississippi. Agent Ragan and a confidential informant (CI) went to the residence, as a result of information given to Ragan by that same CI.

¶3.    The CI had previously told Ragan that the residence was the home of Percy *Waylon*, a man the CI claimed to have known all his life. On March 13, 2003, law enforcement officials arrested Percy *Latiker* at the same address for the sale of cocaine to Ragan. Prior to Latiker's arrest, law enforcement officials had determined that the person who sold the crack cocaine to Ragan was not Percy Waylon, but was, in fact, Latiker.

¶4.    In his report, Ragan described the man from whom he bought the crack cocaine as partially bald, approximately five feet, seven inches tall and between forty and forty-five years of age with a gray beard. At trial, he identified Latiker as the person from whom he bought the cocaine and described Latiker as five feet, seven inches to six feet tall and between forty and fifty years-old with a "salt and pepper" beard. In Latiker's direct testimony, he described himself as six feet tall, fifty-five years of age, and completely bald. On cross-examination the State did not contradict Latiker's description of himself. Ragan testified that he had been within two feet of the person from whom he bought the crack cocaine when it was handed to him and that he had an unobstructed view of the individual's entire body. Agent Ragan's testimony identifying Latiker was the State's only identification evidence. The agents did not

order a fingerprint analysis of the wrapper containing the drugs, and the money used to buy the cocaine was not recovered.

¶5.     Responding to Latiker's misidentification defense, the State called Percy Waylon as a rebuttal witness. Waylon testified that he was not in Leake County on December 12, 2002, and had never been approached by persons seeking to buy crack cocaine. Furthermore, Waylon testified that he was not bald and did not use a toupee or hairpiece. In addition, Waylon testified that he did not know the CI, but that he had been involved in a lawsuit with Latiker in the past.

¶6.     As a defense, Latiker testified that on December 12, 2002, he was not in Leake County, Mississippi, but instead was in Illinois with his son doing volunteer and community service work for the Salvation Army. Latiker testified that he lived in Chicago Heights, Illinois, and came down to Mississippi three or four times a year. Latiker's son, Percy Latiker, Jr., and Latiker's wife, Rodean Latiker, both testified that Percy Latiker was in Chicago doing volunteer work for the Salvation Army on December 12. Latiker's friend from Milwaukee, Dan Terrell, also was called as an alibi witness and recalled being with Latiker "that weekend in Milwaukee" but could not remember what day he was planning to come to Mississippi with Latiker nor what Latiker was doing on December 12 or 13. Latiker did admit on cross-examination that the residence at 930 Damascus Road in Leake County was owned by his parents and that he was arrested there on March 13, 2003. In addition, Latiker admitted that he had met the CI before and knew who he was.

¶7.     Latiker argued that the trial court erred by prohibiting his testimony regarding the contents of supporting documents, schedules of attendance, affidavits, and a letter written by

3

the Community Service Supervisor of the Chicago Heights Corps Community Center, all being essential evidence to corroborate his alibi defense. However, the record does not reveal that Latiker ever offered the documents into evidence for the trial court to make a ruling on their admissibility. During his testimony, Percy Latiker, Jr., did refer to documents regarding his hours of community service, and the State objected and asked to approach the bench. The trial judge stated, out of the hearing of the jury:

> I was presented these documents, which consist of a letter and a three page schedule of attendance prepared by the Salvation Army and written by the Community Service Supervisors. The District Attorney is objecting for he would not have an opportunity to cross-examine the service supervisor if there is testimony regarding the contents of this letter and the supporting documents. This Court is in agreement. The witness can testify from his own knowledge, but I am not going to permit him to refer to these to refresh his recollection, because it is not matters of his own knowledge. It's matters of someone else.

Defense counsel then continued to question Latiker's son regarding the fact that he was required to do community service in Chicago Heights and that his father had given him rides to and from the Chicago Heights Salvation Army because his (Percy Jr.'s) automobile was in need of repairs and because he did not have a driver's license. There was no further mention made of any records.

¶8.     During deliberations, the jury sent the judge a question asking whether there was a document that showed where Latiker was working on December 12 and 13, 2002. The trial judge replied: "You have heard all of the testimony and received all the documents permitted in this case. Your decision must be based upon the law and the evidence that you have received during the trial of this case."

## DISCUSSION

4

I.   WHETHER THE TRIAL COURT ERRED IN DENYING LATIKER'S MOTION FOR A DIRECTED VERDICT AND WHETHER THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

¶9.   Our standard of review for a post-trial motion is abuse of discretion. *Withers v. State*, 907 So.2d 342, 352 (Miss. 2005).   When reviewing the trial court's denial of a motion for directed verdict, we consider the evidence in the light most favorable to the State and give the State the benefit of all favorable inferences that may reasonably be drawn from the evidence. *Seeling v. State*, 844 So. 2d 439, 443 (Miss. 2003).   In the recent case of *Bush v. State*, 895 So. 2d 836 (Miss. 2005), we clarified the distinction between the weight and the sufficiency of the evidence and reviewed numerous cases where the lines between the two have been blurred.

¶10.   Although Latiker, like Bush,  mixes the two, it is clear that Latiker asks the Court to reverse on both weight and sufficiency grounds.   At the conclusion of the trial, he moved for a directed verdict (sufficiency), which the trial court denied.   Subsequently, Latiker filed a motion for a new trial (weight), and in the alternative, for judgment notwithstanding the verdict (sufficiency). In *Bush* we stated:

> In *Carr v. State*, 208 So.2d 886, 889 (Miss.1968), we stated that in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." However, this inquiry does not require a court to
>
> > 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have

5

found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (citations omitted)(emphasis in original). Should the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render [i.e. reverse and discharge]. *Edwards v. State,* 469 So.2d 68,70 (Miss. 1985)(citing *May v. State*, 460 So. 2d 778, 781 (Miss. 1984); *see also Dycus v. State*, 875 So. 2d 140, 164 (Miss. 2004). However, if a review of the evidence reveals that it is of such quality and weight that, 'having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,' the evidence will be deemed to have been sufficient . . .

When reviewing a denial of a motion for a new trial, which challenges the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. *Herring v. State*, 691 So.2d 948, 957 (Miss.1997). A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, "unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict." *McQueen v. State*, 423 So.2d 800, 803 (Miss.1982). Rather the court simply disagrees with the jury's resolution of the conflicting testimony. *Id*. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. *Id*. Instead, the proper remedy is to grant a new trial.

*Bush*, 895 So.2d at 843-44.

¶11. Law enforcement officials arrested Latiker at his parents' residence, where the drug transaction took place. Agent Ragan identified Latiker in court as the man from whom he bought the crack cocaine. Furthermore, Agent Ragan's identification was based on his unobstructed, trained observation of Latiker at a close distance during daylight hours. While Agent Ragan's description does not perfectly match the description of Latiker at trial, the two are similar enough that it becomes a jury issue.

6

¶12. The jury had the opportunity to weigh the testimony of Latiker and the witnesses offered in support of his alibi defense. Admittedly, this testimony was a stark departure from the testimony of Agent Ragan. However, it is common for the jury to be called upon to resolve sharp and irreconcilable differences in the evidence presented for its consideration. It is the jury's job to balance the weight and credibility of the witnesses. *Shamblin v. State*, 601 So.2d 407, 412 (Miss. 1992). We conclude that the evidence before this Court does not point so overwhelmingly in favor of Latiker that reasonable men could not have arrived at a guilty verdict or that allowing the verdict to stand would sanction an unconscionable injustice. Therefore, Latiker's first assertion of error is without merit.

II.     WHETHER PERCY LATIKER WAS PREJUDICIALLY IDENTIFIED IN COURT AS AN ALLEGED SUSPECT.

¶13. Latiker argues that the trial court erred by allowing Agent Ragan to identify him at trial as the man from whom he bought the crack cocaine. However, Latiker did not properly preserve the error regarding this issue for appeal. When the State asked Agent Ragan if the person from whom he bought the crack cocaine was present in the courtroom, Latiker's attorney objected by stating: "Your Honor, we would object. It is obvious the Defendant is the one that's accused. He is sitting here, and he is the only one here." Latiker's broad objection lacks the specificity required to preserve an issue for appeal. *See Irby v. State*, 893 So. 2d 1042, 1047 (Miss. 2004). General objections to testimony are not sufficient to preserve an error. *Crawford v. State*, 787 So.2d 1236, 1246 (Miss. 2001). The party must object with a degree of specificity as to the grounds on which the objection is made, and failure to articulate the grounds is a waiver of the alleged error. *Scott v. State,* 796 So.2d 959, 964 (Miss. 2001).

7

Latiker's objection did not state a recognized legal basis; and therefore, he waived his right to appeal the alleged error.

¶14.     Notwithstanding this procedural bar, Latiker's appeal on this issue is without merit.   He argues that the in-court identification violated his due process rights under the Fifth Amendment and his right to a jury trial under the Sixth Amendment.   Latiker also acknowledges that his objection at trial was not specific enough to preserve the error, but argues that this Court should review Ragan's identification under the plain error rule.   If a contemporaneous objection is not made, an appellant must rely on the plain error rule to raise the unpreserved argument on appeal. *Watts v. State*, 733 So. 2d 214, 233 (Miss. 1999).   "The plain error doctrine requires that there be an error and that the error must have resulted in a manifest miscarriage of justice." *Williams v. State*, 794 So. 2d 181, 187 (Miss. 2001) (citing *Gray v. State*, 549 So. 2d 1316, 1321 (Miss. 1989)).   We apply the plain error rule only when the error affects a defendant's fundamental rights. *Id.*

¶15.     The United States Supreme Court has held that an in-court identification made  pursuant to an impermissibly suggestive out-of-court identification violates a defendant's rights and is inadmissible. *See Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).   Further, in order for an identification to be admissible in court, it must pass a two-step test. *See Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).   A court must first determine whether the identification process was unduly suggestive. *Id.* at 198.   And even if it was, the court has the right to admit the identification if it determines that the out-of-court identification was nevertheless so reliable that no substantial likelihood of misidentification existed. *Id.*   In *Biggers*, the United States Supreme Court laid out five factors to determine an

identification's reliability: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Id.* at 199-200. *See also* ***McDowell v. State,*** 807 So.2d 413. 418-19 (Miss. 2001). We find no evidence that Agent Ragan's identification of Latiker was impermissibly suggestive or unreliable. According to the record, Ragan had an unobstructed view of Latiker from a distance of two feet during the daytime. Ragan is a Mississippi Bureau of Narcotics agent trained to observe individuals suspected of criminal activity so that he may later describe them and testify in court. The description that Ragan gave of Latiker, while not perfect, was quite close. Latiker is now arguing minor details of his description including a difference of three inches in height, five years in age and the fact that he is completely bald as opposed to balding. Further, Ragan's description was relayed to other agents of the Mississippi Bureau of Narcotics and recorded on the same day and within minutes of the transaction. The above factors indicate a high degree of reliability of Agent Ragan's identification; and therefore, Latiker's second assertion of error is without merit.

III.    WHETHER THE COURT ERRED IN PREVENTING LATIKER FROM INTRODUCING DOCUMENTS IN SUPPORT OF HIS ALIBI TESTIMONY.

¶16.    Latiker claims that the trial court prevented him from submitting documents from the Salvation Army that would corroborate his alibi defense that he was in Chicago, Illinois, at the time the alleged crime was committed. We find that these documents were not properly offered by Latiker to the trial court for a ruling on their admissibility. We have long recognized

9

that there is a presumption that the trial court ruled correctly, and it is the burden of the appellant to prove otherwise. *Branch v. State*, 347 So.2d 957, 958 (Miss. 1977). This burden requires that the appellant present to this Court a record of sufficient detail to prove that the alleged error occurred and what the substance of that error was. *Winters v. State*, 473 So.2d 452, 457 (Miss. 1985). This requires that the appellant actually present to the trial court the material constituting the error. *Acker v. State*, 797 So.2d 966, 971 (Miss. 2001) (citing *Moawad v. State*, 531 So.2d 632, 635 (Miss. 1988); *Williams v. State*, 522 So.2d 201, 209 (Miss. 1988)).

¶17. Latiker did not make the above-mentioned documents part of the record. There is no indication that Latiker asked that they be admitted into evidence. There was no offer of proof made: therefore, for the purposes of this Court, these documents do not exist. They are not a part of the record; and therefore, this Court cannot "know them." *Acker*, 797 So. 2d at 971. Counsel had a duty to present these documents to the trial court in an appropriate manner, but failed to do so. Thus, Latiker has no evidence to present to this Court for the purpose of rebutting the presumption that the trial court correctly ruled in excluding the evidence. Latiker's third assertion of error is procedurally barred.

      IV.    WHETHER THE COURT ERRED AND ABUSED ITS DISCRETION BY IMPOSING ITS SENTENCE ON THE DEFENDANT.

¶18. Before sentencing, Latiker asked the trial court to take into consideration the pre-sentencing report which stated that Latiker had no history of drug or alcohol offenses and was a disabled veteran honorably discharged from the United States Army after service in Vietnam. The trial judge then responded:

It's not within the report, but within the Court's information, was that this Defendant, the other night, appeared to be in some physical distress, which was such it required the facility here in town to cause him to be transferred to the emergency room at the local hospital, at which time he appeared to be in considerable distress. The attending emergency room doctor transferred him to the University Medical Center, and the report of the medical center was that there was no medical neurological problem. There was no treatment required. He required no medication, and the opinion of the doctor was he was faking.

The local information regarding his condition at the time he was in the emergency room at the Lackey Memorial Hospital, that he was under the influence of a controlled substance, cocaine and marijuana.

So, you argue that he is a first time offender. You argue that he is a veteran, that he was honorably discharged, all of this as matters of mitigation to the sentence. Yet, I find that in this report he states that he has never been a real drug user or big drinker, was not under the influence when the crime occurred, but he was apparently under the influence at the time of his trial.

So, I have very little sympathy with a situation such as that. I am taking into consideration the Defendant's age.

The maximum sentence for this crime is thirty years and a million dollar fine.

It will be the sentence of this Court, Percy Latiker, that you serve twelve years in the custody of the Mississippi Department of Corrections.

¶19. Latiker argues that the sentence imposed by the trial court was "plain error and an abuse of this Court's discretion" because the trial court was wrong to conclude that he had been under the influence of drugs and was faking his illness. However, Latiker did not raise this issue at the sentencing hearing or in his Motion for a New Trial. Therefore, his fourth assertion of error is procedurally barred. *Ferrell v. State*, 810 So.2d 607, 611 (Miss. 2002). Further, Latiker fails to cite to any authority for his fourth assertion of error. A party's failure to provide authority for its claims on appeal relieves this Court from having to consider the issue. *Williams v. State*, 708 So.2d 1358, 1361 (Miss. 1998).

¶20. Notwithstanding the procedural bar, there is no merit to Latiker's argument. A trial judge is largely unlimited as to the kind or source of information used during sentencing. *Evans v.*

11

*State*, 547 So.2d 38, 41 (Miss. 1989). Furthermore, a trial court is not limited, when determining a sentence, to a consideration of evidence presented in the record at trial. *Ferrell*, 810 So.2d at 612; *Jackson v. State*, 551 So.2d 132, 148-49 (Miss. 1989). The maximum punishment the trial court could have imposed on Latiker was 30 years in prison and a $1 million fine. Miss. Code Ann. § 41-29-139(b)(1). Despite the trial court's disbelief of the pre-sentencing report, Latiker was sentenced to less than half the time in prison allowed by the statute, and no fine was imposed. The trial court did not abuse its discretion when sentencing Latiker.

## CONCLUSION

¶21.    For the reasons set forth above, we hold that the issues raised by Latiker on appeal are without merit. We affirm the trial court's judgment.

¶22 **CONVICTION OF SALE OF COCAINE AND SENTENCE OF TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., DISSENTS, WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING**

.