# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-KA-00434-SCT

*JEREMY WENDELL ISOM*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/15/2005 |
| TRIAL JUDGE: | HON. ANDREW K. HOWORTH |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | RALPH STEWART GUERNSEY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | BEN CREEKMORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/11/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1.     Jeremy Wendell Isom (Isom) was indicted in the Circuit Court of Lafayette County, Mississippi for burglary of a dwelling.  Following a jury trial, Isom was convicted of burglary of a dwelling house and sentenced to serve a term of twenty-five years in the custody of the Mississippi Department of Corrections with five years suspended and twenty years to serve. The trial court denied Isom's post-trial motion for J.N.O.V., or in the alternative, new trial. Isom now appeals to this Court.

**FACTS**

¶2.     On December 26, 2003, Pam Thompson (Pam) awoke between 11:00 p.m. to 12:00 a.m. Pam shared the apartment with her brother, Terrel Thompson, in Oxford, Mississippi. As she entered the hallway, Pam saw two men, one white and one black, walking toward her brother's room. Terrel was not at home at the time of the intrusion. When Pam screamed, the two men ran out of the apartment.

¶3.     Pam only recognized the white man. She knew him because he had been to the apartment before to get some class notes from Terrel. The police later arrested the white man, John Patterson (Patterson). Patterson admitted that he and Jeremy Isom were involved in the burglary. He later agreed to testify against Isom. Patterson testified that he and Isom decided to break into Terrel's apartment, that Terrel was a drug dealer, that they called Terrel on his cellphone, and Terrel told them that he was out of town for the holidays. Once Patterson and Isom learned Terrel was out of town, they decided to break into Terrel's apartment at Oak View Apartments. Isom kicked in the door, and both men entered the apartment. When Patterson saw Pam, he told Isom that there was someone else in the apartment. Both men fled the apartment. Patterson ran out first with Isom following behind him. Patterson stated they were breaking into the apartment to steal his drug dealer's drugs and money. Isom and Patterson ran to Maplewood Apartments, where a friend of Patterson's lived. The police questioned Patterson later that night. He confessed to his involvement in the burglary and testified against Isom at trial.

¶4. Jenny Szerkins (Szerkins) was at Patterson's friend's apartment on December 26, 2003. Szerkins testified that Isom and Patterson arrived at the apartment sweaty. When Isom learned the police were on their way to the apartment, he pulled out a gun and said that he could not be caught with the gun.

¶5. Martha Everitt (Martha) testified that on December 26, 2003, she and her daughter, Jessica Everitt (Jessica), were inside her home located on 2118 Harris Drive in Oxford, Mississippi. Jessica saw flashing lights outside the house. Martha opened her front door and a police officer told her to stay inside the house and lock the door. Jessica told Martha that a man was in their backyard. Martha reported to the police that somebody was in the backyard. Jessica saw the man jump over the fence. Martha then went to the kitchen and she and Jessica saw a black male jump back over the fence, lose his footing, slide and run to one of the fence gates. Martha had motion-sensor lights in her yard.

¶6. The next morning while walking in her backyard, Martha discovered a gun. Martha put the gun in a plastic bag and called the police. At trial, Martha identified Isom as the man in her yard on December 26, 2003. On cross-examination, Martha stated that when the defendant slipped in the yard, he looked straight at her. Later, Martha stated that her spotlight shone on him and he was wearing a "toboggan" on his head.

¶7. Jessica also testified at trial and identified Isom as the man in her backyard. Jessica noticed that the motion-sensor spotlights came on at her home. She saw a man running through the yard. When Jessica went to the back of her house, the spotlight was shining on

3

a black male crouched in front of the fence. She had a good look at him and saw his face. He jumped over the fence. The next day, Jessica saw Isom again by the side of her house. She notified the police that she saw Isom in the yard the next day. The police contacted Jessica and Martha about a photographic line-up. Jessica viewed the photo line-up at the police station and identified Isom from the photographs. Isom was convicted by a jury of burglary of a dwelling house.

### I.    Discovery violation/continuance

¶8.    Isom asserts that the trial court erred by allowing the admission of Jessica and Martha Everitts's testimony and that the trial court failed to apply the procedures for a discovery violation by failing to either grant a continuance or exclude the testimony as outlined in the Uniform Circuit and County Court Rule 9.04(A) and (I) and in *Box v. State*, 437 So. 2d. 19 (Miss. 1983). He also argues that the prosecution's violation of the discovery rule and the trial court's denial of a continuance resulted in substantial prejudice and a miscarriage of justice. The State contends that the trial court did not abuse its discretion by admitting testimony and exhibits into evidence and by denying Isom's request for a continuance. The State also asserts that Isom failed to pass the two factor test in *Brawner v. State*, 872 So. 2d 1, 13 (Miss. 2004), and failed to demonstrate that manifest injustice resulted from the denial of the continuance.

¶9.    Originally, trial was set for December 6, 2004. A jury was empaneled on that day. However, the trial court granted a continuance and reset the trial for January 20, 2005.

4

During the time of the continuance, the State sought to introduce two new witnesses, Jessica and Martha Everitt. Jessica and Martha viewed an out-of-court photographic line-up on January 4, 2005, and were to provide eyewitness testimony concerning Isom's whereabouts on the night of the burglary. Isom filed a motion in limine on the date of trial, to exclude new evidence. In the alternative, he requested that the trial be continued in order to give defense counsel the opportunity to ask the witnesses questions and prepare a proper defense.

¶10. Defense counsel asserted in the written motion in limine and at the hearing on the motion that the district attorney's office contacted Isom's defense counsel by telephone on January 14, 2005. The assistant district attorney informed defense counsel that there were two new witnesses, Jessica and Martha, and relayed the substance of their potential testimony. The prosecution delivered the names, address, and telephone number of Jessica and Martha, synopsis statements of Jessica and Martha, an amended witness list, and a supplement to witness statements to the office of Isom's counsel on January 17, 2005. Defense counsel was not aware that this information was dropped by his office until January 18. Also on January 18, the assistant district attorney produced 17 digital photographs, 12 color photographs, and two aerial maps. On "Wednesday, January 18"[1], the assistant district attorney gave defense counsel other documents and a copy of the photographic line-up

---

[1] In the motion in limine and Motion for J.N.O.V., defense counsel outlines the dates that he received information from the district attorney's office. He refers to "Wednesday, January 18, 2005" in the motions. This appears to be an slight oversight as January 19 was a Wednesday, not January 18.

5

viewed by Jessica on January 4, 2005, from which she identified Isom. The telephone number provided by the prosecution for Jessica and Martha was disconnected; therefore, Isom's counsel received a new contact number for the witnesses the day before trial. Isom had a two day trial in which Martha testified on January 20 and Jessica testified on January 21, 2005.

¶11. The State believed that Jessica and Martha's testimony would link a gun to Isom. The witnesses saw Isom in their yard on the night of the burglary, and Martha found a gun in their yard the next day. The trial court took the motion under advisement. Prior to Martha's testimony, Isom renewed his motion in limine to exclude the testimony or continue the case. The trial court denied the motion and gave defense counsel fifteen minutes to speak to the witnesses.

¶12. Uniform Circuit and County Court Rule 9.04(A) provides that the prosecution must disclose the names and addresses of all witnesses in chief to the defendant or his/her attorney. This Court in *Payton v. State*, 897 So.2d 921, 941 (Miss. 2003) set out the procedures for alleged discovery violations as follows:

> In *Box*, and its progeny, this Court set out the procedure for trial courts to follow when a discovery violation has occurred. This precedent has been codified in URCCC 9.04(I), which reads, in pertinent part, as follows:
>
> **If during the course of trial**, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:

6

1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and

2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.

3. The court shall not be required to grant either a continuance or mistrial for such a discovery violation if the prosecution withdraws its efforts to introduce such evidence. The court shall follow the same procedure for violation of discovery by the defense.

URCCC 9.04 (emphasis added).

¶13.    In this case, defense counsel claimed that he needed time to interview the witnesses and prepare a defense. The trial court overruled the *Box* objection by defense counsel. However, the trial court did allow defense counsel fifteen minutes to interview the witnesses. In his brief, Isom argues that defense counsel was made aware of the two witnesses the week of trial, only had an opportunity to contact the witnesses the day before their testimony, and only had fifteen minutes on the day of their testimony to interview them.[2]

---

[2] In the body of this issue, Isom's main complaint of a discovery violation relates to the testimony of Jessica and Martha. However, in the summary of his argument, he cites to "a raft of photographs and other evidence." The trial court admitted a number of photographs and aerial pictures of the apartment crime scene and the Everitts's home and yard. The witnesses testified to the photographs and used the photographs to describe the various areas. Likewise the aerial photographs were used by the witnesses to describe where the two apartment complexes were located in relationship to one another. The admission of these exhibits simply illustrated the locations that each witness described in his or her testimony and was not prejudicial.

7

¶14. The Everitts were recently discovered witnesses. Once the prosecution was aware of the witnesses, it informed Isom's counsel. **There is no evidence that the prosecution deliberately withheld any information from Isom**. The record is silent on what occurred between January 4 and January 14, 2005. The record does reflect that the prosecution requested that the police look into the unidentified witnesses in the police report. When the police gave the prosecution the witnesses names, an interview was conducted on January 14, 2005, after which the prosecution called the defense counsel on the same day to inform him of the witnesses and their potential testimony. The prosecution orally told defense counsel about the witnesses and their expected testimony and provided a written synopsis of the Everitts's testimony to defense counsel prior to trial.

¶15. The trial court erred by failing to grant a continuance and admitting Jessica and Martha's testimony. However, these errors were harmless because the evidence was so overwhelming that the jury could have sustained a conviction of burglary of a dwelling even without Jessica and Martha's testimony. The evidence before the jury was that Pam was in the apartment that she shared with her brother Terrel on the night of the burglary. Pam recognized Patterson as a person that had been to her apartment to exchange school notes with her brother Terrel. She saw Patterson and a black male leave the house.

¶16. Patterson confessed to the crime and testified against Isom. He told police that Isom was his accomplice to the burglary. Patterson called Terrel on a cellphone and learned that Terrell was out of town. Patterson and Isom then decided to break into Terrel's apartment

8

to steal money and drugs. Once Patterson and Isom realized that the apartment was occupied, they fled Pam's Oak View apartment and went to the Maplewood apartments. When Isom and Patterson arrived at a Maplewood apartment, they were described as "sweaty."

¶17. Szerkins testified that she recognized Patterson and Isom from their former high school days together. She also stated that Isom pulled out a gun in front of her and a group of other people at the apartment, stating he could not be caught with the gun.

¶18. Officer Hatcher received a dispatch of a burglary and went to Pam's house on December 26. When he arrived at the scene, the officer called in a description to other police units of a black male and a white male who had both fled the scene. The officer went to the Maplewood apartment of Jay Lovett and found a group of people there. Officer Owen attempted to open a back room in the apartment, heard some blinds, and a window open. Officer Owen went outside and saw a person fleeing the area. Both Officers Hatcher and Owen began to chase the person. This person ran down the driveway of 2118 Harris Drive (the Everitts's home at the time) and into some nearby woods.

¶19. The next day, Officer Hatcher arrived at work and was given a gun to enter into evidence. The gun was recovered from the backyard of 2118 Harris Drive. Officer Hatcher later went to the house and spoke to a female who stated that the gun was found in her backyard. This house was the same house on Harris Drive the officer had chased the fleeing person the previous night.

¶20. Clearly, the above facts were so overwhelming that the jury could have sustained a conviction of burglary of a dwelling even without Jessica and Martha's testimony. Therefore, the trial court's denial of the motion for continuance and subsequent admittance of Martha and Jessica's testimony, while in error, was harmless. *See Jones v. State*, 669 So. 2d 1383, 1395 (Miss. 1995)

## II. *Biggers* factors

¶21. Isom argues that the trial court should have excluded the testimony of Martha and Jessica Everitt because their identification was unreliable. In addition, Isom asserts that Martha's in-court identification was tainted because she was present in the same room when Jessica positively identified Isom in the out-of-court photographic line-up. Isom also argues that Martha and Jessica's in-court identifications fail to meet most, if not all, of the *Biggers* factors. *See Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

¶22. Martha and Jessica made positive identifications of Isom at trial. Prior to trial, Martha and Jessica came to the police station to look at a photographic line-up. Jessica made a positive identification at the out-of-court photographic line-up. Martha, however, failed to positively identify Isom in the line-up and chose two people that could have been the person in her backyard. Jenny Sznenick testified that Isom showed a gun to a group of people, including herself, at the apartment. The Everitts's testimony, Martha's in particular, assisted in linking a gun to Isom. Martha testified that she found a gun in her backyard the day after a black male ran through her yard to escape police.

10

In *Roche v. State*, 913 So. 2d 306, 310 (Miss. 2005), this Court held:

> The standard of review for trial court decisions regarding pretrial identification is "whether or not substantial credible evidence supports the trial court's findings that, considering the totality of the circumstances, in-court identification testimony was not impermissibly tainted." *Ellis v. State*, 667 So. 2d 599, 605 (Miss. 1995) (citing *Magee v. State*, 542 So. 2d 228, 231 (Miss. 1989); *Nicholson v. State*, 523 So. 2d 68, 71 (Miss. 1988); *Ray v. State*, 503 So. 2d 222, 224 (Miss. 1986)). We will only disturb the order of the trial court "where there is an absence of substantial credible evidence supporting it." *Id*. (citing *Ray*, 503 So. 2d at 224).

This Court, also, held:

> We have previously held that "pretrial identifications which are suggestive, without necessity for conducting them in such manner, are proscribed." *York v. State*, 413 So. 2d 1372, 1383 (Miss. 1982). The United States Supreme Court has also stated, "[t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." *Foster v. California*, 394 U.S. 440, 443, 89 S. Ct. 1127, 22 L.Ed.2d 402 (1969) (quoting *Stovall v. Denno*, 388 U.S. 293, 302, 87 S. Ct. 1967, 11 L.Ed.2d 1199 (1967)).

*Roche*, 913 So. 2d at 310-11. Even if the identification is impermissibly suggestive, the identification can be admissible when "considering the totality of the circumstances surrounding the identification procedure, the identification did not give rise to a very substantial likelihood of misidentification." *York*, 413 So. 2d at 1383 (quoting *Neil v. Biggers*, 409 U.S. 188, 199-200, 93 S. Ct. 375, 34 L.Ed.2d 401 (1972)). In *Horne v. State*, 825 So. 2d 627, 637 (Miss. 2002), this Court set forth the five *Biggers* factors which this court must consider to determine whether the standard has been met for the identification testimony. *See Biggers*, 409 U.S. at 199-200. The five factors are: "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention;

11

(3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty exhibited by the witness at the confrontation; and (5) the time between the crime and the confrontation." *Horne*, 825 So. 2d at 637 (citing *Biggers*, 409 U.S. at 199- 200.

¶23.   In addition, this Court has held that "[p]retrial photograph identifications have been generally upheld if the witnesses view the photographs separately and if there is no emphasis placed on certain photographs as opposed to others." *Burks v. State*, 770 So. 2d 960, 963 (Miss. 2000)(citing *Simmons v. United States*, 390 U.S. 377, 383, 88 S. Ct. 967, 19 L.Ed.2d 1247 (1968)).  In *Burks*, two witnesses viewed the photographs together and conferred with one another about their choices. *Id*. at 965.  This Court found, considering the totality of the circumstances, the photograph identification was not so impermissibly suggestive as to give rise to irreparable mistaken identification. *Id*.

### A.     Out-of-court photographic line-up

¶24.   Isom, not the State, questioned Martha about an out-of-court photographic line-up. Martha went to the police station to view the line-up; however, she did not positively identify Isom.  Instead, Martha simply narrowed the photographs down to two people that could have been the man in her backyard.  Isom raised the issue of Martha's inability to make a positive out-of-court identification.  The State only asked Martha to make an in-court identification. Accordingly, Isom may not complain on appeal for an issue that he, himself, raised.  "[T]he general rule is that a defendant may not, himself, introduce evidence at trial and then assert on appeal that the admission of the evidence constituted reversible error." *McCullough v.*

12

*State*, 750 So. 2d 1212, 1215 (Miss. 1999); *Fleming v. State*, 604 So. 2d 280, 289 (Miss. 1992).

¶25. Martha's testimony on cross-examination refutes any assertion by Isom of an impermissibly suggestive identification. Martha stated that she was present when Jessica identified Isom in the photographic line-up. However, Martha did not know or see who Jessica chose from the photographic line-up. The officer did not allow Jessica and Martha to view the photographs together.

¶26. We find that Martha did not positively identify Isom at the photographic line-up. Isom can show no prejudice by Martha's presence at the photographic line-up. Rather, Martha's inability to positively identify Isom at the photographic line-up benefits Isom, as it creates a jury question of Martha's reliably and credibility on the issue of identification. Furthermore, a review of the photographic line-up viewed by Martha and Jessica and admitted at trial shows there was nothing impermissibly suggestive about it.

¶27. As for Jessica's out-of-court identification, the State introduced testimony from Jessica concerning her positive identification of Isom at the photographic line-up. Isom objected to the admissibility of the line-up testimony on the grounds that the document was produced a few days before trial. The trial court overruled the objection. We find that any argument that the out-of-court identification was improper is waived. At trial, Isom cited to a discovery violation not improper identification testimony. As stated in Issue I, the trial court correctly found no discovery violation. Since the objection was based on the grounds

13

of a discovery violation and not improper identification, the issue was waived. *See* ***Stringer v. State***, 279 So. 2d 156, 158 (Miss. 1973).

**B.     In-court identification**

¶28.     Turning to the ***Biggers*** factors, Martha and Jessica's in-court identifications favor the admissibility of their testimony.

1.     Martha

¶29.     The first ***Biggers*** factor is the opportunity of the witness to view the criminal at the time of the crime. A spotlight was shining in Martha's backyard when Isom was in the yard. Her house had motion-sensor lights which turned on in the backyard. Martha saw a black male attempt to jump the fence in the backyard and slip. When Isom slipped, Martha saw Isom because he looked straight at her. We find this factor favors admissibility.

¶30.     The second ***Biggers*** factor is the witness's degree of attention. Martha saw Isom for a few seconds and noticed that he had a "toboggan" on his head. She never saw Isom with a gun. When asked if she remembered seeing Isom's face, Martha testified that she did because the spotlight was shining on his face. We find this factor favors admissibility.

¶31.     The third ***Biggers*** factor is the accuracy of the witness's prior description of the criminal. Martha stated that the person in her yard was a black male wearing a toboggan. We find this factor is in favor of admissibility.

¶32. The fourth *Biggers* factor is the level of certainty exhibited by the witness at the confrontation. Martha testified that she remembered seeing his face. We find this factor in favor of admissibility.

¶33. The fifth *Biggers* factor is the time between the crime and the confrontation. The crime occurred on December 26, 2003. Martha identified Isom in court in January 2005, more than one year after the events. We find this factor favors Isom.

2. Jessica

¶34. The first *Biggers* factor is the opportunity of the witness to view the criminal at the time of the crime. The motion-sensor lights came on around the house. Jessica saw a man running in the front of her yard. She went to the back of the house, and the motion-sensor spotlight was shining in the backyard. Jessica saw a black male crouched by the fence. The male then tried to jump the fence. The next day Jessica saw the male in the backyard again. We find this factor favors admissibility.

¶35. The second *Biggers* factor is the witness's degree of attention. Jessica saw the male, whom she later identified in-court as Isom, in her yard when the spotlight was shining on him. She noticed that he had a "do rag" on his head. Jessica also stated that she had a good look at the suspect. We find this factor favors admissibility.

¶36. The third *Biggers* factor is the accuracy of the witness's prior description of the criminal. Jessica testified that the person in her yard was a black male wearing a "do rag." She also saw Isom the next day in her yard. We find this factor is in favor of admissibility.

15

¶37. The fourth ***Biggers*** factor is the level of certainty exhibited by the witness at the confrontation. Jessica identified Isom at trial and stated that she had a good look at him. We find this factor favors admissibility.

¶38. The fifth ***Biggers*** factor is the time between the crime and the confrontation. The crime occurred on December 26, 2003. Jessica identified Isom in court on January 21, 2005, more than one year after the events. We find this factor favors Isom.

¶39. All of the five ***Biggers*** factors, except the fifth factor, the time between the crime and the confrontation, favor admissibility in this case. Looking at the totality of the circumstances, substantial and credible evidence supported the trial court's ruling to admit the evidence. We find the testimony was sufficient for the identification to be admissible without any likelihood of misidentification or irreparable identification. We find this issue is without merit.

### III.    Sentencing.

¶40. Isom argues that the trial court abused its discretion by sentencing him to the maximum sentence pursuant to Miss. Code Ann. § 97-17-23. In addition, Isom claims that the trial judge relied on his own findings of fact as aggravating factors, instead of a jury's findings, to enhance and justify "a long prison sentence." Isom relies is large part upon ***Apprendi v. New Jersey***, 530 U.S. 466, 120 S. Ct. 2348, 147 L.Ed.2d 435 (2000) and ***Blakely v. Washington***, 542 U.S. 296, 124 S. Ct. 2531, 159 L.Ed.2d 403 (2004) for authority.

16

¶41.   "Sentencing is within the complete discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute." *Walls v. State*, 718 So. 2d 1107,1114 (Miss. 1998)(quoting *Hoops v. State*, 681 So. 2d 521, 537 (Miss. 1996)); *Berry v. State*, 722 So. 2d 706. 707 (Miss. 1998).  In *Fleming v. State*, 604 So. 2d 280, 302 (Miss. 1992), this Court held that the general rule in Mississippi is that a sentence that does not exceed the maximum term allowed by the statute cannot be disturbed on appeal.  However, this Court will review a sentence that allegedly imposed a penalty that is disproportionate to the crime. *Id*.

¶42.   Miss. Code Ann. § 97-17-23 provides as follows:

> Every person who shall be convicted of **breaking and entering the dwelling house** or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, **shall be punished by imprisonment in the Penitentiary not less than three (3) years nor more than twenty-five (25) years.**

(Emphasis added).

¶43.   The maximum sentence permitted under Miss. Code Ann. § 97-17-23 for the burglary of a dwelling house is twenty-five years.  The trial court sentenced Isom to twenty-five years, five years suspended and twenty to serve, which is clearly within the proscribed period of incarceration.  As Mississippi case law provides, sentencing is at the discretion of the trial court and not subject to appellate review if it is within the limits prescribed by statute. *Walls,* 718 So. 2d at 1114; *Berry* , 722 So. 2d at 707; *Fleming*, 604 So. 2d at 302.

¶44.    Isom asserts that the trial judge enhanced Isom's sentence and based the sentence on his own findings of fact as to aggravating factors rather than the findings of a jury.  In support of this assertion, Isom cites to three excerpts from the trial record.  The first reference concerns a page of the transcript that "references the investigation of the probation department as to aggravating factors."  It is unclear from Isom's brief how this reference harmed Isom.  The record reflects that the trial court had a pre-sentence report prepared by the Department of Corrections.  In *Ferrell v. State*, 810 So. 2d 607, 612 (Miss. 2002), this Court held that "[a] defendant's constitutional rights are not violated when a sentencing court considers the information contained in a pre-sentence investigation report in determining what sentence to impose."

¶45.    Isom objected to certain pages of the report.  The State made no objection, and the trial court allowed the information to be redacted from the report.  Isom was allowed to make a statement to the trial court.  Part of his statement was made to clarify any problem with the pre-sentence report.  The trial court stated that it reviewed the investigation report, however, it would "take that into consideration as may be appropriate *subject to the revisions* that are being made here today."  (Emphasis added).  Therefore, we find the trial court indicated that it would not consider these redacted portions of the report.  In addition, Isom had an opportunity to make a statement to the judge.

¶46.    Isom cited two other points made by the trial court.  The trial court stated that the circumstantial proof indicated that Isom was armed at the time of the burglary.  The record

18

reflects that Szerkins and the Everitts testified about a gun. Szerkins testified that when Isom learned that the police were coming to the apartment where he was hiding, Isom showed a group of people a gun and stated that he could not get caught with a gun. Martha and Jessica saw Isom in their yard on the night of the burglary. The next day Jessica saw Isom in her yard again, and Martha walked around the yard and found a gun.

¶47. Isom also cites the trial judge considering that Isom did not accept responsibility for the crime. Indeed, Isom admitted in the sentencing phase that he did not take responsibility for a crime. However, he did take responsibility for placing himself around certain people and in an environment which resulted in his "situation," that being his criminal proceeding.

¶48. In *Jackson v. State,* 551 So. 2d 132, 149 (Miss. 1989), this Court held:

> Our law has long provided that the imposition of sentence following a criminal conviction is a matter within the discretion of the Circuit Court, subject only to statutory and constitutional limitations. So long as these are not offended, we rarely interfere. Moreover, *the Court is not limited to the consideration of evidence presented of record at trial when imposing sentence.*

(Emphasis added).

¶49. Isom's reliance on *Apprendi* and *Blakely* is misplaced. Isom cites to *Apprendi* for the proposition that "[o]ther than the fact of a prior conviction, any fact that increases a penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury." *Apprendi*, 530 U.S. at 490. The statute at issue in *Apprendi* had an enhancement sentence for hate crimes. The United States Supreme Court found that the jury was to determine if the sentence should be enhanced. *Id.*

¶50. Isom relies upon *Blakely* for its clarification of the term "statutory maximum." In *Blakely*, 542 U.S. at 303-04, the Unites States Supreme Court held:

> Our precedents make clear, however, that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* [*See*] *Ring* [*v. Arizona*, 536 U.S. 584, 592-593, and n. 1, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)], (" 'the maximum he would receive if punished according to the facts reflected in the jury verdict alone' " (quoting *Apprendi*, supra, [530 U.S.] at 483, 120 S.Ct. 2348)); *Harris v. United States*, 536 U.S. 545, 563, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (plurality opinion) (same); cf. *Apprendi*, supra, at 488, 120 S.Ct. 2348 (facts admitted by the defendant). In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," [1 J.] Bishop, [Criminal Procedure § 87, p. 55 (2d ed. 1872)], and the judge exceeds his proper authority.

¶51. We find that the statute applicable to Isom's crime of burglary of a dwelling is distinguishable from *Apprendi* and *Blakely*. Isom was found guilty by a jury pursuant to Miss. Code Ann. § 97-17-23 which has no sentence enhancement provision. In other words, there is no increased or enhanced punishment pursuant to Miss. Code Ann. § 97-17-23 upon a finding of aggravating factors.

¶52. In this case, Isom was indicted for burglary of a dwelling house. This crime carries a maximum sentence of twenty-five years imprisonment. Clearly, because Isom was found guilty of burglary of a dwelling house, he could be sentenced to twenty-five years imprisonment for this crime within the guidelines set forth in the applicable statute. We find there was no abuse of discretion by the trial judge in sentencing Isom. The twenty-five year

sentence, with five years suspended and twenty years to serve, was within the limits set forth by the statute. The trial judge redacted and did not consider a portion of the investigation report at Isom's request. There was testimony that Isom had a gun on the night of the burglary. Further, consideration by the trial judge that Isom did not accept responsibility for his actions was proper. *See **Jackson v. State,*** 551 So. 2d at 149. We find the issue is without merit.

## CONCLUSION

¶53. We find that the conviction and sentence of the Circuit Court of Lafayette County, Mississippi is affirmed.

¶54. **CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TWENTY-FIVE (25) YEARS, WITH TWENTY (20) YEARS TO SERVE, FIVE (5) YEARS SUSPENDED AND FIVE (5) YEARS ON POST RELEASE SUPERVISION, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND PAYMENT OF ALL COSTS, AFFIRMED.**

**SMITH, C.J., WALLER, P.J., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. COBB, P.J. AND DIAZ, J., NOT PARTICIPATING.**